## PORTER v. WILSON.

ERROR TO THE SUPREME COURT OF THE STATE OF
OKLAHOMA.

No. 58.  Submitted November 5, 1915.—Decided November 29, 1915.

This court accepts the decision of the highest court of the State that
the state constitution was not violated by any action of the trial
court.

In this case, *held* that a decision by the trial court of Oklahoma, based
on demurrer to the evidence of the plaintiff and, after weighing that
testimony for the purpose of determining the rights of the respective
parties, did not abridge immunities and privileges of the plaintiff
as a citizen of the United States nor deprive the plaintiff of property
without due process of law in violation of the Fourteenth Amendment
by disregarding the provisions of § 5039, Rev. Laws Oklahoma, mak-
ing the provisions of the statute respecting trials by jury applicable
to trials by the court.

Section 5 of the act of February 28, 1891, 26 Stat. 794, c. 383, amending
the general allotment act of February 8, 1887, 24 Stat. 388, c. 179,
had no effect upon the right of inheritance as to Creek Indians in
Indian Territory inasmuch as by § 8 of the act of 1887, Creek terri-
tory was expressly excepted from the operations of that statute.

The provision in § 38 of the Oklahoma act of May 2, 1890, 26 Stat. 81,
legalizing Indian marriages, relate only to marriages theretofore
contracted and not to those thereafter contracted.

39 Oklahoma, 500, affirmed.

THE facts, which involve the inheritance of an allot-
ment to a Creek Indian, are stated in the opinion.

*Mr. Lewis C. Lawson* and *Mr. Frank L. Montgomery* for
plaintiff in error.

There was no appearance for defendants in error.

MR. JUSTICE McKENNA delivered the opinion of the
court.

Suit to quiet title, brought in the district court of
Hughes County, State of Oklahoma, and in which plain-

tiff in error was plaintiff and defendants in error defendants, and we shall so designate them.

The case concerns the inheritance of an. allotment to one Ben Porter, a Creek citizen and member of the Tribe of the Creek Nation. Plaintiff contends that she is the daughter and only child of Porter and Jennie McGilbra, whom he married, it is asserted, in 1893, and with whom he afterwards resided for one and one-half years as husband in accordance with the usages and customs of the Creek Nation. He subsequently separated from her, it is alleged, but never got a divorce from her, and that therefore they remained husband and wife until the time of his death, which occurred about November 23, 1906, he dying intestate, and being seized of the lands in controversy at that time, plaintiff, Nellie Porter, became entitled in fee simple to all of them.

It is averred that after Porter's separation from his wife he "took up" with another woman by the name of Lena Canard who, after the death of Porter, married one William Freeman; that Porter left surviving him one Sam Porter, a half brother, a Seminole Indian and so enrolled, and one Nannie Broadnax, a half sister. From this brother and sister and Mrs. Freeman the defendants in error derive their title.

Defendants deny the marriage of Porter and Jennie McGilbra or that plaintiff was his child or in any way related to him and aver that their grantors "were the sole and exclusive heirs of Porter and as such inherited the lands from him."

The judgment recites that the cause coming on, upon hearing upon the pleadings and upon evidence offered on the part of the plaintiff, and upon the plaintiff resting her cause with the court upon the evidence offered, the defendants demurred to the evidence and the court sustained the demurrer, and found "that the alleged marital relation between Ben Porter and Jennie McGilbra was

not established by the proof and did not exist, either by reason of customs or the laws of the Creek Nation; that the relation was illicit; that the plaintiff, Nellie Porter, was the illegitimate child of this illicit relation." The court entered a decree dismissing plaintiff's bill and forever quieting the title of defendants against plaintiff. The decree was affirmed by the Supreme Court.

The Supreme Court sustained the action of the trial court in rendering judgment upon the evidence, saying, "It is obvious from the record that the court passed upon the entire case," and that "it would be too subtle a refinement to say that the court should have overruled the demurrer and thereupon, on the same evidence, have found for the defendant; otherwise a reversal must follow." And further: "Ultimately plaintiff's right to recover involved a question of fact for the court's determination. That the court did consider the testimony and determine the insufficiency is clearly established from the language of the journal entry. The burden of proof rested upon the plaintiff to prove, not only the Indian customs of the Creek Nation pertaining to marriage, but to establish her rights thereunder. There was more or less conflict in the testimony of plaintiff's witnesses, from which different conclusions might be drawn, and there being testimony reasonably tending to support the judgment of the court, the same will not be weighed by this court to ascertain whether the court's decision is against the preponderance of the testimony." For which conclusion the court cited a number of Oklahoma cases.

Against the action of the trial court and its affirmance by the Supreme Court it is contended that the constitution of the State and the Fourteenth Amendment have been violated in that the plaintiff's privileges and immunities have been abridged and her property taken without due process of law. The foundation of the contention is § 5039 of the Revised Laws of Oklahoma. It provides

that "the provisions of this article respecting trials by jury apply, so far as they are in their nature applicable, to trials by the court." The argument is that under that section "a citizen of the said State and of the United States is entitled to the same protection and enforcement of the law, on a demurrer to the evidence where their causes of action are tried by the court, as when tried to a jury." And, it is further argued, if there be any evidence, "conflicting evidence cannot be weighed or considered by the court" and the demurrer should have been overruled. These contentions are attempted to be supported by citation of many cases and elaborate comment made upon them to sustain the assertion "that a demurrer to the evidence presents a proposition of law and not of fact; and that conflicting evidence in the case is not to be considered, if there be evidence even tending to support the claims of the demurree."

The contention is difficult to handle. It seems to confound so completely the purpose and various qualities of evidence and the functions of a court.

Whether, however, there be a technical difference between the final submission of a case to the court and its submission upon a demurrer to the evidence we need not dwell upon. The difference has been made unimportant, indeed, removed from the present case, by the decision of the Supreme Court. The court decided, as we have seen, that the trial court "did not render its judgment alone upon the demurrer to the evidence, but, after a consideration of the proof submitted by plaintiff, made its findings of fact, thereby necessarily weighing the plaintiff's testimony for the purpose of determining the rights of the respective parties to a recovery." And the court pointed out that "even though it were conceded that technical error was committed, the substantial rights of the plaintiff were not affected; as she had introduced her evidence and rested her case, she was not caused to change

her position, nor did she suffer any disadvantage in the procedure adopted." The court added that it was required by the statutes of the State and its decisions to disregard errors or defects in the pleadings or proceedings which did not affect the substantial rights of the parties.

It is manifest, therefore, that the action of the trial court was in full exercise of the power entrusted to it under the laws of the State, and the contention of plaintiff that the Constitution of the United States is violated is untenable. We, of course, accept the decision of the Supreme Court of the State that the state constitution is not violated.

The next contention of plaintiff is that she inherited the lands by virtue of § 5 of the act of Congress of February 28, 1891, 26 Stat. 794, c. 383, which amended the general allotment act of February 8, 1887, 24 Stat. 388, c. 119. By this section it is provided "that for the purpose of determining the descent of land to the heirs of any deceased Indian under the provisions of the fifth section of said act of February 8, 1887, the issue of Indians cohabiting as husband and wife according to the custom and manner of Indian life," shall be "taken and deemed to be legitimate issue of the Indians so living together, and every Indian child, otherwise illegitimate, shall for such purposes, be taken and held to be the legitimate issue of the father of such child."

But by § 8 of the act of February 8, 1887, 24 Stat., p. 391, "the territory occupied by the . . . Creeks . . . in the Indian Territory" was expressly excepted from the provisions of that act. It was hence concluded by the Supreme Court of the State that § 5 of the act of 1891, *supra*, was without effect upon the right of inheritance, as to the Creek Indians in the Indian Territory.

Plaintiff attacks this conclusion by citing § 38 of the act of May 2, 1890, c. 182, 26 Stat. 81, 98, which organized the Territory of Oklahoma. It provides "that all mar-

riages heretofore contracted under the laws or tribal customs of any Indian Nation now located in the Indian Territory are hereby declared valid and the issue of such marriages shall be deemed legitimate and entitled to all inheritances of property or other rights, the same as in case of the issue of other forms of lawful marriage. . . ."

It will be observed that the asserted marriage between Porter and the mother of plaintiff took place in 1893, that is, subsequent to the act of 1890 organizing the Territory of Oklahoma, and therefore was not a marriage within the meaning of § 38, theretofore contracted, and therefore plaintiff's reliance must be upon the provision, before stated, in § 5 of the act of 1891. As that section was expressly restricted to lands allotted under § 5 of the act of 1887, and as the lands occupied by the Creeks in the Indian Territory could not be and were not allotted under the latter section, it follows that the provision relied upon had no application to the lands here in question, they being part of the territory so occupied by the Creeks.

*Judgment affirmed.*