## LOWRANCE v. HENRY et al.

No. 9015—Opinion Filed June 10, 1919.

Rehearing Denied July 15, 1919.

2nd Rehearing Denied September 9, 1919.

(Syllabus by the Court.)

1. **Appeal and Error—Harmless Error—Demurrer to Evidence—Judgment.**

In the trial of a law action, all of the issues, both of fact and law, were submitted to the court without the intervention of a jury. At the conclusion of the plaintiff's testimony, and after he had rested his case, defendants demurred to the evidence, and at the same time requested the court to render judgment in their favor as prayed for in their answers. The court sustained the demurrer, made special findings of fact, and rendered a decree in favor of the defendants. Held, that while the judgment of the court sustained the demurrer, yet, having made special findings of fact, it was obvious that the court weighed the plaintiff's testimony for the purpose of determining the rights of the respective parties, and the whole case being before the court, and there being evidence reasonably tending to support the court's findings, no reversible error was committed.

2. **Trial—Judgment—Time of Rendition.**

When a trial is had before the court without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not do so at the earliest possible time, when the rights of the plaintiff will not be cut off or impaired by its so doing, and when the plaintiff has introduced all his proof and rested, no right of his will be im-

paired. if the court then determines what has been proven.

3. **Appeal and Error—Harmless Error.**

This court is required by statute to disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party.

Error from District Court, Nowata County; T. L. Brown, Judge.

Action by E. M. Lowrance against D. W. Henry and others. From judgment for defendants the plaintiff brings error. Affirmed.

W. H. Kornegay and W. A. Chase, for plaintiff in error.

W. P. Thompson, Tillotson & Elliott, and Ames, Chambers, Lowe & Richardson, for defendants in error Henry and Stanfield.

Chas. D. Welch and Thos. J. Flannelly, for defendant in error Prairie Oil & Gas Co.

JOHNSON, J. This is an appeal from the district court of Nowata county, and this action was commenced by E. M. Lowrance, plaintiff in error, as plaintiff below, against Wade S. Stanfield and D. W. Henry, defendants in error, who were defendants below. on the 4th day of October, 1912, and on the 7th day of May, 1913, the plaintiff, by permission of the court, filed an amended petition making the Prairie Oil & Gas Company, a corporation, a party defendant.

The amended petition, upon which the case was tried, alleged that in 1904 plaintiff resided in what is now Nowata county, Okla., and had under his control a considerable body of land thought to be valuable for oil and gas, and was well acquainted with persons in that neighborhood owning and controlling similar lands; that in that year it was agreed between the plaintiff and defendants Henry and Stanfield that they would form a partnership for the purpose of procuring and operating oil and gas leases in the neighborhood of Alluwe, Okla.; that it was agreed that the plaintiff and defendant Stanfield should each contribute his time and services to procuring land and oil leases on land, that the defendant Henry should pay the expenses for procuring the leases, and that after the leases were procured they should belong to all three of the parties jointly and should be operated by them jointly under the name of the Terre Haute Oil & Gas Company; that pursuant to the said agreement all three of the parties contributed some means and some time to procuring oil and gas leases, and as a result of their joint labors a large amount of leases and the fee to some land were secured, some in the name of D. W. Henry and some in the name of Wade S. Stanfield. The lands

upon which it is alleged that leases were procured are then described, and it is alleged that in the operation of such leases and the profits derived therefrom the parties were to share equally. Then follows a description of certain lands alleged to have been purchased in fee. It is alleged that it was the agreement that plaintiff should go on the land and operate the same, that defendant Henry should have charge of the books of the partnership and the handling of the finances thereof, and that all operations should be carried on in the name of the Terre Haute Oil & Gas Company. It is further alleged that the defendants have received $100,000 more than was necessary to pay the expenses of operation, and have refused to account to the plaintiff for any part thereof, or to recognize him as a partner or as having any right or interest in the alleged partnership. And the plaintiff prayed a decree declaring him a partner with the defendants and defining the extent of his interest in said partnership and for an accounting.

The separate answers of the defendants Henry and Stanfield denied that in 1904, or at any other time, the plaintiff had under his control a considerable body of land, or any body of land whatever, thought to be valuable for oil and gas. They alleged that the plaintiff was a white man, not entitled to an allotment, and that it was contrary to public policy and in violation of the laws and treaties governing for the plaintiff to have under his control any land except the individual allotments of his minor children, Edith Lowrance, Addie L. Lowrance, and Arthur Lowrance, of whom he was the natural guardian, and of whose land he had control, if at all, solely as trustee of the said children, and with which he was precluded from dealing for his own profit, and on which he was forbidden by law to take or give any oil or gas lease for himself or in which he was personally beneficially interested, and on which he had no power to execute an oil and gas lease at all, or to contract to do so.

The defendants denied that in the year 1904, or at any other time, any contract or agreement was made or entered into with the plaintiff to the effect that they would form a partnership for the purpose of securing and operating oil and gas leases in the neighborhood of Alluwe, Okla., or at any other place, or for any other purpose whatever, and the defendants denied that any partnership between them and the plaintiff was ever entered into and that they ever sustained a partnership relation with the plaintiff. The defendants further specifically denied all and singular the other allegations in plaintiff's amended petition.

The defendants alleged that certain lands in said answers described, upon which plaintiff in his amended petition alleged that oil and gas leases were procured for a partnership consisting of plaintiff and these defendants, were the tribal allotments of plaintiff's daughter, Addie L. Lowrance, and his son, Arthur Lowrance; that they were each minors in 1904, and continued to be so until June 28, 1911; that in the year 1904 the plaintiff solicited the defendant Henry to take a lease upon the said allotments of said children and to advance him some money thereon as a bonus for the use and benefit of said minors, which Henry did, the plaintiff representing that he would be appointed legal guardian of said minors, and would execute to the said Henry a departmental lease upon the said lands for oil and gas purposes upon the customary terms, but there was no agreement or understanding that plaintiff was or was to become a partner of the said Henry with respect to said lands or leases, or any other lands or leases, or that the plaintiff was to have any interest therein whatever; that if there had been any such agreement or understanding, the same would have been a contract for the violation of a trust to be assumed, a contract to do a thing forbidden by law, and that said agreement and any contract into which the same entered would have been and would be illegal, contrary to public policy and void.

The defendants further allege that thereafter the plaintiff was duly appointed by the United States Court for the Northern District of the Indian Territory as the legal guardian of the persons and estates of his said two minor children, Addie L. Lowrance and Arthur Lowrance; that he accepted said appointment and duly qualified thereunder, and thereafter on or about the 23d day of March, 1907, that plaintiff as such legal guardian filed in the United States Court for the Northern District of the Indian Territory at Vinita, where said guardianship causes were pending, an application for an order of said court authorizing and directing plaintiff, as the legal guardian of said two minor children, to execute to the defendant Henry oil and gas mining leases upon the lands of said two minor children during the period of their minority, on the forms and under the rules and regulations prescribed by the Secretary of the Interior; that said application was duly heard and granted by the court, and thereupon the court made and entered its order authorizing the plaintiff, as the legal guardian of said two minors, to lease to the defendant Henry for oil and

gas purposes, during the minority of said minors, their said lands, said leases to be made upon the forms and under the rules and regulations prescribed by the Secretary of the Interior, and further requiring that the plaintiff, as such guardian, enter into a good and sufficient bond in the sum of $500 for each minor, payable to the United States of America in trust for said minors, conditioned that said plaintiff should execute such leases with fidelity to the interests of his said wards, and well and faithfully account and turn over for the use of said minors all moneys, rents, profits, or other things of value that he might receive from the leasing of said lands; that pursuant to said order of said court the plaintiff, in his fiduciary capacity as the legal guardian of the persons and estates of said two minors, executed and delivered to the defendant Henry, upon the forms and under the rules and regulations prescribed by the Secretary of the Interior, oil and gas leases upon the lands of said two minors effective during the period of their minority, and the defendant Henry entered upon said lands under said leases, operated the same during the terms of the leases, and faithfully paid all the rents and royalties stipulated for therein.

The defendants further alleged that there was no agreement or understanding whereby the plaintiff was or was to become a partner with either of the defendants with respect to said lands and leases or any other lands or leases, or by which the plaintiff was to have any interest therein whatever, and that if there had been any such agreement or understanding the same would have been illegal, contrary to public policy, and void, and would have rendered void any contract into which such agreement or understanding entered, and could not be made the basis of this or any other action. The answers were verified.

On the 7th day of May, 1913, the plaintiff, with permission of the court, filed an amended petition making the defendant in error the Prairie Oil & Gas Company, a corporation, a party defendant, and alleging, in addition to the allegations in his original petition, that it was agreed that the defendant Henry should take charge of the books of the partnership, handle the finances, and receive the proceeds of the oil and pay the expenses, and that under such arrangements the defendants Stanfield and Henry had received the proceeds therefrom and had received $100,000 in excess of the expenses; that the oil derived from the leases had been sold to the defendant the Prairie Oil & Gas Company, and the price therefor paid to its codefendants Stanfield and Henry,

and that it was at that time receiving oil derived from the operation of the leases; that notice of the rights of the plaintiff was served on the defendant the Prairie Oil & Gas Company on August 9, 1911; that on that date the plaintiff made a demand on the defendant the Prairie Oil & Gas Company to pay him for the oil run until his claim against the defendants Stanfield and Henry was satisfied, and that it refused to comply with said demand and refused to account to the plaintiff, and prayed judgment against the defendants Stanfield and Henry; and the Prairie Oil & Gas Company filed an answer, alleging, in substance, that on May 31, 1911, the plaintiff commenced another action, No. 1006, in the district court of Nowata county, Okla., against the defendants Wade S. Stanfield and D. W. Henry, codefendants, and the Prairie Oil & Gas Company, in this action, for recovery of damages in the sum of $25,000 for the alleged conversion of the oil produced by said defendants from the premises described in plaintiff's petition, which action before filing of this petition herein was dismissed without prejudice; that said action so instituted and dismissed was for the recovery of damages for the alleged conversion of the same oil for value of which recovery is sought herein against this defendant; further alleging that the plaintiff's amended petition contained two separate causes of action, one against the defendants D. W. Henry and W. S. Stanfield for the recovery of money paid them by this defendant the Prairie Oil & Gas Company to plaintiff's use as and for the purchase price of plaintiff's oil alleged to have been sold by them to this defendant, and the other against this defendant the Prairie Oil & Gas Company, which was indebted for the value for the same oil in the hands of this defendant the Prairie Oil & Gas Company, and that said two causes of action were improperly joined and that there was a misjoinder of defendants therein; and further denying all of the material allegations in plaintiff's petition contained. This answer was verified.

For a reply, the plaintiff alleged that in this action he was seeking an accounting against the defendant the Prairie Oil & Gas Company for his share of the oil run from the land after the alleged notice was served upon it.

The cause was tried at the October, 1916, term of the court before Hon. John W. Pitchford, district judge, specially assigned by the Chief Justice to try the case. After the plaintiff had introduced all his evidence and had announced that he rested, the defendants Stanfield and Henry demurred

thereto on the grounds that the evidence introduced by and on behalf of the plaintiff was not sufficient to entitle him to recover. And the Prairie Oil & Gas Company interposed a demurrer thereto on the grounds: (1) That the evidence shows that there is a misjoinder of parties defendant; (2) that the evidence shows that there is a misjoinder of causes of action; (3) that the evidence fails to prove or tend to prove any cause of action in favor of the plaintiff and against the defendant the Prairie Oil & Gas Company.

After argument thereon the court sustained the several demurrers, expressly finding and stating that the evidence, in the court's opinion, was not sufficient to establish the existence of the partnership, and also that if the contract of a partnership had ever been entered into the same involved a breach of trust on the part of the plaintiff, and was illegal, contrary to public policy, and void and unenforceable. Thereupon, on motion of the defendants, the court rendered judgment for the defendants.

The plaintiff filed a timely motion for a new trial, which was overruled by the court. to which action of the court the plaintiff duly excepted, and within the time allowed by law lodged his appeal in this court and made the following assignments of error:

"(1) The court erred in sustaining the demurrers to the evidence and each of them.

"(2) The court erred in sustaining the demurrer to the evidence of the plaintiff in error made by the defendant Wade S. Stanfield.

"(3) The court erred in sustaining the demurrer of D. W. Henry to the evidence of the plaintiff in error.

"(4) The court erred in sustaining the demurrer to the evidence of the Prairie Oil & Gas Company to the evidence of the plaintiff.

"(5) The court erred in overruling the motion of plaintiff in error for new trial.

"(6) The court erred in refusing to admit in evidence the bills offered by the plaintiff in error, on page 710, Exhibits 124 to 223.

"(7) The court erred in refusing to admit in evidence plaintiff's Exhibits 124 to 223.

"(8) The court erred in rendering judgment against the plaintiff in error."

The plaintiff's assignments of error will be considered together.

It is urged that the court erred in sustaining the demurrer to the evidence interposed by the defendants. This alleged error is predicated upon the theory that a demurrer to the evidence admits as true all of the evidence of the plaintiff that in the least degree tends to support the allegations of his petition and the theory of his case. together with all inferences and deductions opposed to those interposing the demurrer which may be reasonably drawn from the evidence.

Furthermore, it is urged in support of the alleged error that in passing upon the demurrer the court must ignore all conflicts and contradictions, and must treat as not considering any evidence favorable to the party demurring, and after giving all of the evidence such consideration, together with the reasonable inferences and deductions which might be drawn therefrom, and after having treated and considered all evidence favorable to the party demurring as withdrawn from the case, if there is any evidence in the slightest degree which tends to support the plaintiff's case, however unreasonable or contradictory it may appear to the court to be, to have sustained the demurrer was error.

In support of this contention our attention is called to the case of Scully v. Williamson, 26 Okla. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A, 1265; St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Cameron v. Henderson, 40 Okla. 648, 140 Pac. 404, and Midland Valley R. Co. v. Larson, 41 Okla. 360, 138 Pac. 173. These were jury cases, and the rule contended for by the plaintiff is the correct one in the cases triable to a jury, because the jury must determine the weight of the evidence and the credibility of the witnesses, and the court cannot invade its province by weighing the evidence and passing upon the credibility of the witnesses.

In cases triable to a jury where the evidence in the least degree tends to support plaintiff's case, the court is powerless to invade its province and exercise its functions by sustaining a demurrer to the evidence, and thereby preventing the jury from exercising its judgment upon the weight and sufficiency of the evidence.

In cases triable to a jury the court can exercise its statutory right to sustain a demurrer to the evidence when it is of such a nature or character that all reasonable men must draw the same conclusion therefrom; the rule being if there is cause for a different opinion among different people as to what weight and credit should be given the evidence, or as to what facts have been proven, the jurors being themselves the ultimate judges of facts, it is the exercise of their judgment which ultimately must control.

But in cases triable to the court a different rule prevails, where the court makes findings which show that he has weighed

and considered the evidence interposed. The court is the sole judge of the credibility of the witnesses and the weight and value to be given their testimony, and must ultimately determine the facts proved. The plaintiff must be given full opportunity to present all competent evidence essential, and this may be said to be the only limitation upon the prerogative of the court.

This case comes squarely within the rule announced by this court in the case of Porter v. Wilson et al., 39 Okla. 500, 135 Pac. 732, which is a well-considered case, and Mr. Commissioner Sharp, who delivered the opinion of the court, in discussing the question involved, said:

"Where the trial is before the court, it is charged with the duty of determining the facts; while where the trial is before the jury, the facts are for its determination; it being the province of the court to declare the law. We must not, however, overlook the very important fact that the court did not render its judgment alone upon the demurrer to the evidence, but, after a consideration of the proof submitted by plaintiff, made its findings of fact, thereby necessarily weighing the plaintiff's testimony for the purpose of determining the rights of the respective parties to a recovery."

A similar question was before the Supreme Court of Washington in Lambuth v. Stetson & Post Mill Co., 14 Wash. 187, 44 Pac. 148, and from which we quote at length. It was said by Hoyt, J., speaking for the court:

"The cause went to trial before the court; a jury having been waived by the parties. After plaintiff had put in his evidence and rested, defendant moved for nonsuit and a dismissal of the action on the ground that the evidence had not shown that plaintiff was entitled to recover. This motion was granted for the reason, as stated by the court, that a fair preponderance of the proof established facts which prevented a recovery by the plaintiff. The granting of this motion, followed by a dismissal of the action, is the ground upon which plaintiff relies for a reversal. If the court had a right to weigh the evidence tending to establish the facts alleged in the answer against that which tended to make out plaintiff's prima facie case, and decide in accordance with what he thought to be the preponderance of the evidence on either side, the judgment must be affirmed, for, if he had a right to do this, his conclusion has the force here of the verdict of a jury, and will not be disturbed if there was evidence upon which it could be founded. Could the court thus weigh the testimony for and against the claim of plaintiff upon this motion for a nonsuit, or must it be denied if there was any evidence tending to sustain the claim of the plaintiff, however much there might be in opposition thereto? * * * Appellant has cited a large number of cases to show that a motion for a nonsuit should be denied if the evidence introduced by the plaintiff tended to establish the facts necessary to a recovery; but all but one stated the rule in cases in which the cause was tried before a jury. * * * But where the entire trial is before the court, which must finally pass upon the law and facts of the case, there is no good reason why it should not be allowed to determine the facts necessary to a proper application of the law at any time during the trial. It would be worse than useless for the court, after its attention had been called to the insufficiency of the evidence offered by the plaintiff to establish the facts necessary to enable him to recover, and after being satisfied that such was the nature of the evidence introduced by the plaintiff, to require the defendant to put in evidence to disprove that which had been already sufficiently disproved. When the trial is before a jury, the court cannot weigh the testimony upon a motion for a nonsuit, for the reason that it cannot weigh it at any time; but when the trial is without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not so weigh it at the earliest possible time when the rights of the plaintiff will not be cut off by its so doing, and when the plaintiff has introduced all of his proof and rested, no right of his will be cut off if the court then determines what has been proven. It cannot be presumed that plaintiff's case will be strengthened by the evidence put in by the defendant. If, when plaintiff had submitted his evidence, the defendant had rested without putting in any proof, it is clear that the court would have had to determine the questions of fact made by the pleadings upon a preponderance of the testimony. Hence, under the rule contended for by the appellant, the court might be put in the anomalous position of denying the motion for a nonsuit and immediately thereafter, upon the refusal of the defendant to put in any proof, deciding the case in his favor. No good purpose could be subserved by refusing to a trial court the right to determine the law in the light of the evidence upon a motion for a nonsuit the same as upon final submission. It was the right of the court, upon the motion for a nonsuit, to decide as to the preponderance of the evidence, and it having decided that such preponderance was with the defendant, and there having been testimony to support such finding, the judgment rendered thereon must be affirmed."

This was passed upon by the Supreme Court of the United States in Porter v. Wilson, 239 U. S. 170, 36 Sup. Ct. 91, 60 L. Ed. 204, and in affirming the judgment of the Supreme Court of Oklahoma it was said that—

"The contention of the plaintiff in error therein confounded completely the purpose and various qualities of evidence and the functions of the court."

This question has also been decided by this court in the cases of Lyon v. Lyon, 39 Okla. 111, 134 Pac. 650; D'Yarmett v. Cobb, 51 Okla. 113, 151 Pac. 589; Bailey v. Privett, 64 Oklahoma, 166 Pac. 150.

This record of more than 1,000 pages presents a very interesting case, interesting from the standpoint of the litigants on account of the amount involved, and from the standpoint of a lawyer on account of the questions presented for determination. We congratulate the trial court and counsel for the parties, upon the thorough, able, and impartial manner the case was tried below, as well as the ability displayed by counsel in briefing the case for this court. There seems to have been nothing overlooked or omitted, and this court has been greatly aided thereby.

We have carefully examined the entire record and, finding no reversible error, the case is affirmed.

OWEN, C. J., and KANE, RAINEY, and HARRISON, JJ., concur.