### ST. LOUIS-S, F. RY. CO. v. EDWARDS.

No. 16402—Opinion Filed May 4, 1926.

Rehearing Denied July 20, 1926.

**1. Statutory Provision.**

The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.

**2. Appeal and Error—Harmless Error—Instructions.**

Where a judgment is rendered, and from an examination of the entire record it appears that the instructions to the jury complained of and the requested instructions refused, have not worked a miscarriage of justice, nor constituted a substantial violation of a constitutional or statutory right, this court is powerless to reverse such judgment.

**3. Same.**

Where error is alleged in giving certain instructions which submitted a question to the jury that was not probably at issue in the case, and where, under any view of the evidence, defendant was not entitled to recovery, the giving of certain instructions will not effect a reversal.

**4. Same.**

In a case tried to a jury, where the verdict is for the plaintiff for one-half the amount sued for in the case, and the evidence reasonably tends to support the verdict of the jury, erroneous instructions which might ordinarily be considered prejudicial will not cause a reversal of the case.

**5. Same—Affirmance — Sufficiency of Evidence.**

Where a cause has been tried to a jury, and there is a state of facts reasonably deducible from the evidence which under any theory of the law is applicable to the is-

sues and the facts and the authorities, the judgment will not be disturbed.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from Superior Court, Creek County; J. Harvey Smith, Judge.

Action by Owen Edwards against the St. Louis-San Francisco Railway Company to recover damages. Judgment for plaintiff, and defendant appeals. Affirmed.

E. T. Miller, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiff in error.

Johnson & Miller and Wayne H. Lasater, for defendant in error.

Opinion by MAXEY, C. The parties to this suit appeared in the court below as Owen Edwards, plaintiff, and St. Louis-San Francisco Railway Company, defendant, and will be referred to in this opinion as they appeared in the court below.

The plaintiff sued the defendant to recover damages sustained by reason of a gunshot wound inflicted on him by either Frank Warner or J. T. Osborn, agents, employees, servants, and designated by defendant as special agents, whom the defendant had employed to watch its railroad yards west of Bristow, and apprehend persons found breaking into box cars for the purpose of stealing the contents thereof. On the evening of November 8, 1922, J. T. Connors (who was employed by the defendant as a yardman, whose duties it was to check up all cars going out during the time of his shift in the work, and there were some eight or ten cars lined up on the siding in the yards west of Bristow, which it was necessary for Connors to inspect and check up before they went out that night) about seven o'clock in the evening of that day, started down to the west yards to check up these cars, and found the plaintiff, Owen Edwards, sitting in his automobile on the streets of Bristow, and he requested Edwards to drive him down to the yard where the cars were located that had to be checked. As a matter of accommodation, they being acquaintances and friends, Edwards very kindly took Connors in his automobile and drove down the road until they came opposite the cars. Connors got out and Edwards ran his car up on the side of the road to wait for Connors, and Connors being a little longer than Edwards contemplated, he got out of his car and walked over in the yards, and found Connors working on a door of a car, on which the seal had been broken and the door opened. Connors was standing on the

ground looking in the car with a flash light to see if he could discover that anything had been taken out. He found one box that the end had been broken out of, and some kegs of lard that had been moved so that one was sitting on top of the other, and while Connors was looking through the car, Edwards was standing some 10 or 12 feet from him, and without any warning whatever, Warner and Osborn fired on them, and Edwards' arm was broken by a bullet, apparently from a revolver, between the elbow and wrist, which fractured the bone of his arm so that parts of it had to be taken out. Connors was shot with a shotgun loaded with buckshot, and Warner and Osborn came to them and arrested them, and it was then learned that Warner was shooting the pistol and Osborn the shotgun. They arrested Connors and Edwards and took them to Bristow, and Edwards gave bond for appearance before the U. S. Commissioner at Tulsa, but the next day they returned and took Edwards to Sapulpa, and put him in jail, where he was confined three or four days, and then taken to Tulsa before the U. S. Commissioner for preliminary examination, and Edwards was discharged, but Connors was bound over to the grand jury.

On the preliminary hearing, Warner and Osborn testified that Connors was breaking into the car himself, and they presumed they were burglars when they fired at them, and that when they went up to them and examined them, they found the seal had been broken off of the car and it was in Connors' pocket. They found no arms on either Connors or Edwards, and the contention of Connors was that he found the seal on the car broken, and under his duties he took the seal and put it in his pocket, so that he could turn it in to the station agent; that the car was broken open when he came to it on his inspection tour, and that he shoved the door back, and was looking into the car to see if he could discover anything taken from the car, and while he was so engaged, Warner and Osborn fired on them and wounded Edwards and also Connors. So far as the record shows, Connors was never prosecuted, and at the time of this trial, he was at Bakersfield, Cal., working for some railway company, and he did not testify in this case. Warner and Osborn claim that they thought Connors was breaking open the car, and that Edwards was watching.

The sole question involved is, whether Warner and Osborn, conceding that they were officers employed to watch the cars in the yard, were justified in shooting Edwards

on the presumption that Connors was breaking open the car, and that Edwards was watching. Edwards tells a very straightforward story about the matter. He says that he was in his car on the streets in Bristow, and that Connors came along and asked him to drive him down to the west yards to inspect eight or ten cars that were going out that night; that he drove him down there as a matter of accommodation, and that Connors was inspecting the cars and claimed that the seal was broken in the car door, and he took it and put it in his pocket and shoved the door back, so that he could look in and see whether anything had been taken out; that he was standing off some eight or ten feet from Connors, when they were shot. The evidence shows that a great many cars had been broken open in that west yard at Bristow, and that Warner and Osborn had been employed by the defendant as special officers to watch the yard and apprehend any person they caught breaking in the cars. It seems to us that Warner and Osborn were not justified in shooting these men without giving them some warning. There is no question but what Warner and Osborn were in the employ of defendant, and that under the facts, defendant is liable for their wrongful acts. The statute requires officers, arresting without a warrant, to warn the person sought to be arrested that they are officers and demand their arrest. But in our judgment, and that is according to the testimony of Edwards, they were not warned in any way and knew nothing of the officers' presence until they were shot.

We think that Warner and Osborn recklessly fired on Edwards and Connors in disregard of their duties to warn them. In the argument of counsel for defendant, much space in their brief is taken up in arguing the issues in the case and invoking highly technical objections to the pleading in support of their contention. The writer of this opinion was educated in the law in a common-law state, and practiced in said state for several years before coming to Oklahoma, and it was very hard for him to adapt himself to the Code pleading. We all know that the parties to a lawsuit under the Code are not held to that strictness of pleading that they are under the common-law rule of pleading, and our courts are inclined to disregard errors in pleadings, if there is enough that the parties know what there is to try. In fact, our Legislature has enacted a statute, section 316, Comp. St. 1921, which reads as follows:

"Immaterial Errors to be Disregarded.

The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

This section has been construed in a long line of cases that are cited in the notes to said section, and the court has given it a very liberal construction. Among the cases cited in the notes to this section are: Lowrance v. Henry, 75 Okla. 250, 182 Pac. 489; Dickinson v. Whitaker, 75 Okla. 243, 182 Pac. 901; and Congdon v. McAlester Carriage & Wagon Factory, 56 Okla. 201, 155 Pac. 597, and a long list of other cases under the construction pleaded on this statute by our courts.

We think the pleadings in this case were sufficiently explicit for the parties to know what they were trying. There are also objections and exceptions urged to the instructions given by the court and the instructions requested by the defendant and refused by the court. We have examined the entire charge of the court, and while the charge is somewhat long, in fact longer than we think it should be, yet, under the construction placed on the foregoing sections, we cannot say that the jury did not understand the issues submitted to them, and were misled by the instructions given. In the case of St. Louis-San Francisco Railway Co. v. Rushing, 31 Okla. 231, 120 Pac. 973, this section was referred to, and the fourth paragraph of the syllabus of the opinion is as follows:

"The court in every stage of action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

The courts hold that these instructions, though erroneous, will not be ground for reversal, if, under any theory of the evidence, same could not possibly be prejudicial, and that inaccuracies in instructions are not prejudicial, and no ground for reversal. Kuhl v. Supreme Lodge, 18 Okla. 383, 89 Pac. 1126; Snyder v. Stribling, 18 Okla. 168, 89 Pac. 222; Snyder v. Rosenbaum, 54 L. Ed. 186; Producers Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9. We therefore think that the instructions, taken as a whole, though some of them may be technically erroneous, show no prejudicial error to have been done, and same may be said of the instructions refused. Applying the rule laid down in the above cases, we think the ver-

dict should not be disturbed on account of any instructions given or refused. Under the evidence, we are of the opinion that the jury was correct in finding that Warner and Osborn were negligent, and in our opinion were reckless in shooting the plaintiff. We are inclined to adopt Edwards' version, that the car was open and Connors was simply trying to see if anything had been taken out when he was shot, and that Edwards was some distance away when he was shot. We do not believe from the testimony that Connors broke open the car with intention to burglarize it, and we do not think that Warner and Osborn had any ground for believing that he had broken the car open for the purpose of burglarizing it. That was a question of fact for the jury, and we think it was fairly submitted to the jury, and they had to find that Warner and Osborn were not justified in firing on Edwards, in order to return the verdict that they did.

There is an error assigned that the verdict of the jury is excessive. Edwards' arm was badly broken and mangled by the shot that he received, and according to the testimony of the physicians he would necessarily suffer pain and mental anguish for a considerable period of time, and while his arm has sufficiently recovered so that he will have the use of it, it is badly disfigured; and under the rule adopted by this court, that where questions of fact are submitted to the jury and the jury finds on said fact, this court will not disturb their verdict if there is any evidence to support it, let the judgment of the trial court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 1168 § 3190. (2) 4 C. J. p. 1029 § 3013; p. 1048 § 3031. (3) 4. C. J. p. 909 § 2878. (4) 4 C. J. p. 1029 § 3013. (5) 4 C. J. p. 853 § 2834. See under (2, 3) 2 R. C. L. p. 257; 1 R. C. L. Supp. p. 479; 4 R. C. L. Supp. p. 98; 5 R. C. L. Supp. p. 89.