### DAVIS v. WALLACE et al.

No. 22147.   Oct. 16, 1934.

Rehearing Denied Nov. 20, 1934.

H. R. Christopher, for plaintiff in error.

Hunter L. Johnson, Floyd E. Staley, and Wedgwood & Houk, for defendants in error.

PER CURIAM. This action filed in the district court of Major county, Okla., prayed for the cancellation of certain mineral deeds transferring interests in section 23, township 23 north, range 10 west, in Major county, and sections 12 and 13, township 23 north, range 10 west, in Alfalfa county. The petition alleged fraud and misrepresentation in the execution of said instruments by Mary A. Davis, plaintiff in error. It was alleged that the instruments were executed in blank, and that the plaintiff thought she was signing only oil and gas leases, but found

later that she had executed mineral deeds at the same time. She alleged that the printed forms of the oil leases and mineral deeds were so commingled that she was misled in the execution of the mineral deeds.

The answers of the defendants admitted the ownership of undivided mineral oil and gas rights in said sections above described. They alleged the purchase of the interests with no knowledge of the alleged fraud and misrepresentation and no knowledge of any facts that would put them on notice, and that they were innocent purchasers of said interests for value. They further denied any participation in the alleged fraud. They all claimed to be bona fide purchasers of the interests claimed by them, and prayed that the title to their interests set out be quieted in them as against the plaintiff and her grantees. A reply in the form of a general denial made up the issues in the case.

At the conclusion of plaintiff's evidence, the plaintiff asked leave to amend her petition to allege other acts of a similar character to be a part of a general scheme to defraud by various acts of misrepresentation and trickery, to which the defendants objected, which objections the court sustained and denied the request to amend the petition.

The evidence of the plaintiff disclosed that the plaintiff, a widow, Mary A. Davis, had been a school teacher for some time, and had owned 640 acres of land in Major and Alfalfa counties for 30 years; that she had leased the land in both counties for oil and gas previously. On September 8, 1927, one O. O. Wallace, one of the defendants, came to her farm where she and her daughter-in-law were, and was brought to the house by her son who introduced Mr. Wallace to her. He desired to lease her land. He remained in her home for about an hour, and during that time Mrs. Davis signed certain instruments —eight in number—which later proved to be four oil and gas leases and four mineral deeds. Payment was made shortly for three of the leases and four deeds. Later a change in the fourth instrument was desired, and it was sent by the Exchange National Bank of Tulsa to Helena Bank for correction. This was the first time that the plaintiff knew that she had signed any mineral deeds. This was October 25, 1927. Mrs. Davis, on October 25, 1927, wrote one of the defendants, the Provident Royalties Corporation, stating that the mineral deed which had been "assigned" to them from John A. Hooker, another defendant, had no doubt

been obtained from the "agent" who had misrepresented matters to her, and that she had learned that it lasted "forever" and wished to get the deed back and remove the cloud from her land.

This involved the N. E. ¼ of section 12-23-10 in Alfalfa county. The Provident Royalties Corporation offered to return her deed if reimbursed for the amount paid by them for the same. On November 4th, in response to her letter of October 31st, asking return of her oil lease, the Exchange National Bank of Tulsa wrote Mrs. Davis, sending back the cashier's check which she had mailed them, stating her request could not be granted as the lease had been delivered, and that the check was previously sent her as consideration for the lease upon instructions given at the time of the delivery of the lease to it. Mrs. Davis wrote defendant Wallace on November 10th, stating: "I do not object to lease and ½ royalty, as I fully understood that, but to mineral deed which you said nothing about until when I signed up it was for minerals." She stated she had not deposited the check on the S. E. ¼ section 12-23-10, but would see an attorney first, and asked the return of her instruments. On November 25, 1927, the check of $160, dated October 26, 1927, above referred to, was cashed by Mrs. Davis as shown by the punched date on the same. Mrs. Davis stated on cross-examination as to her understanding of the term "½ royalty :"

"Q. You thought at the time you understood it. What did you think you understood at that time? A. Well, I thought it was half of the eighth. Q. The half of the eighth ? A. Yes, sir. Q. The oil and gas lease provided that the lessor or person who owns the lease is to get one-eighth of the oil? A. Yes. (C.-M. p. 108) (Q. You say here, you put that in the present tense, 'I do not now,' after hearing of the mineral deeds, you understood it was royalty? A. No, I understood I had signed a lease and I thought the half royalty was 50 cents I got after the first year. That is what I thought the half royalty was. (C.-M. pp. 109-110). Q. You cashed that, Mrs. Davis, after you learned about the mineral deeds, though? A. Well, I had learned that they couldn't—that it couldn't be changed at that time. It was on record and I learned the business had all gone through and I cashed it, yes. (C.-M. p. 112) Q. And you were to get a dollar an acre for the first year? A. Yes, Q. And then you were to get 50 cents an acre after the first year? A. Yes. Q. That's all. The Court: And you understood that 50 cents meant that word 'royalty'? A.

That's what I thought was royalty. That is the understanding I had of what he told me. That's what I meant." (C.-M. p. 116).

At the close of plaintiff's evidence, the defendants demurred to the same, and the court sustained the demurrer and dismissed the petition. A motion for a new trial was later overruled.

The brief of plaintiff in error urges the reversal of the judgment, grouping the assignments of error under three heads as follows: (1) Excluding plaintiff's testimony; (2) entering judgment for defendants on the demurrer; (3) sustaining the demurrer.

A demurrer to the evidence was recognized at common law and has been used in the practice in Kansas and in Oklahoma for many years, both before and since statehood. 3 Blackstone's Commentaries, sec. 373; Thayer's Preliminary Treatise on Evidence, p. 236; 5 Wigmore on Evidence (2d Ed.) sec. 2495, p. 462; 6 Ency. Pl. & Pr. p. 439; 21 R. C. L. p. 606, sec. 140; 4 C. J. p. 904, sec. 2873; Jansen v. City of Atchison (1876) 16 Kan. 358; Kansas Pac. Ry. Co. v. Taylor (1877) 17 Kan. 566; Kansas City, Ft. S. & G. R. Co. v. Foster (1888) 39 Kan. 329, 18 P. 285; Jackson v. Kincaid (1896) 4 Okla. 554, 46 P. 587; Frick v. Reynolds (1898) 6 Okla. 638, 52 P. 391; Shawnee L. & P. Co. v. Sears (1908) 21 Okla. 13, 95 P. 449; St. L. & S. F. R. Co. v. Loftis (1910) 25 Okla. 496, 106 P. 824; Nance v. Okla. Fire Ins. Co. (1912) 31 Okla. 208, 120 P. 948; Cameron & Co. v. Henderson (1914) 40 Okla. 648, 140 P. 404.

The effect of a demurrer to the evidence of the plaintiff is to request the court to determine whether the evidence offered is sufficient to justify the further consideration of the case. The demurrer admits the truth of all competent evidence of the plaintiff. In the consideration of the record on the demurrer, the court may withdraw from consideration all evidence unfavorable to the plaintiff which raises an issue of fact and may restrict its consideration to the evidence favorable to the plaintiff.

The court may, however, exclude incompetent evidence admitted over the objection of the defendant. Gillett v. Ins. Co. (1894) 53 Kan. 108, 36 P. 52; Lee v. Mo. Pac. Ry. Co. (1903) 67 Kan. 402, 73 P. 110; Gernert v. Griffin (1911) 28 Okla. 733, 116 P. 439.

In Nance v. Okla. Fire Ins. Co. (1912) 31 Okla. 208, 120 P. 948, in an opinion by Hayes J., the court said:

"In considering a demurrer to the evidence, a trial court may disregard incompetent testimony admitted over proper objections; and, on appeal to this court from a ruling sustaining a demurrer to the evidence, incompetent evidence admitted over objection will not be considered for the purpose of reversing such ruling, and if the competent evidence admitted fails to make out a prima facie case for the party against whom the demurrer is directed, the ruling of the trial court will be sustained. Clinton Nat. Bank v. McKennon, 26 Okla. 835, 110 P. 649; Lee v. Railway Co., 67 Kan. 402, 73 P. 110, 63 L. R. A. 271."

The admission of evidence on cross-examination of the plaintiff or his witnesses in support of the answer does not prevent the consideration of the demurrer to the evidence by the court. Arnold v. Hoffman & Son Co. (1914) 93 Kan. 54, 143 P. 413.

The court may consider also undisputed testimony favorable to the defendant, brought out in the presentation of plaintiff's case when passing upon the demurrer of defendant to the evidence of the plaintiff. In Carter Oil Co. v. Independent Torpedo Co. (1924) 107 Okla. 209, 232 P. 419, the general rule is stated by Mr. Justice Gordon with the modification just suggested, in the following portion of the opinion:

"The rule governing the trial court in weighing the evidence upon a demurrer to the evidence has been variously stated in the syllabi of the decided cases in this court. In some of these syllabi there is an expression that, upon a consideration of a demurrer to the evidence, it is the duty of the trial court to withdraw and ignore evidence unfavorable to the party against whom the demurrer is interposed. Such a statement may have been proper in the particular case under consideration, but it is too broad to be correctly applied to every case, and this court has intended to say that it is only where the evidence is conflicting upon the particular point that the unfavorable portion upon the point is to be withdrawn from consideration. If evidence is introduced unfavorable to the plaintiff in the making of his own case, and there is no conflict as to the truth thereof, it would clearly be error in determining the duty of the trial court to require it to ignore such evidence brought out from the plaintiff himself or his witnesses."

See also, Williams v. Williams (1922) 87 Okla. 195, 209 P. 769-770, and Carder v. Martin (1926) 120 Okla. 179, 250 P. 906-908.

The demurrer to the evidence in jury cases, tried by the court without a jury,

may not be strictly authorized by the language of the statute, but is clearly within the spirit of the same. In Porter v. Wilson (1913) 39 Okla. 500, 135 P. 732, Commissioner Sharp, speaking for the court, said:

"The statutory warrant for demurring to the testimony of the party on whom rests the burden of the issues is found in the third paragraph of section 5794, Comp. Laws 1909, which expressly provides for the order of procedure in jury trials. This provision was held in Chicago Lumber Co. v. Merrimack River Sav. Bank, 52 Kan. 410, 34 P. 1045, to be authorized by the spirit, if not the letter of the Code of Procedure of that state (section 275 [4722] Stats. Kan. 1901) and which provision of the statute is identical with section 5794, supra. This practice appears to have been recognized by the Supreme Court of Kansas in a number of cases, among which are: Wolf v. Washer, 32 Kan. 533, 4 P. 1036; Farnsworth v. Clark, 62 Kan. 264, 62 P. 655; Wehe et al. v. Mood et al., 68 Kan. 373, 75 P. 476. The nature of a demurrer to the evidence has been defined to be (2 Tidd. Pr. p. 265) 'A proceeding by which the judges of the court in which the action is depending are called upon to declare what the law is upon facts shown in evidence, analogous to the demurrer upon the facts alleged in a pleading'. See, also, Suydam v. Williamson et al., 20 Wall. 427, 15 L. Ed. 978. And the practice of demurring to the evidence in jury trials, while not recognized in some jurisdictions, is an ancient and well-established one, having a firm support in principle, and recognized in many of the states, and by the federal and English courts (Elliott's General Practice, secs. 855, 856) though in trials before the court the practice of demurring to the evidence appears to be an anomalous procedure, followed only by the Supreme Court of Kansas, so far as our investigation of the authorities extends (30 Cyc. 1946: footnote to Elliott's General Practice, sec. 855.)"

This case is cited with approval in the following cases: Lowrance v. Henry (1919) 75 Okla. 250, 182 P. 489; Luster v. First Nat. Bank (1925) 111 Okla. 168, 239 P. 128; Winans v. Harn (1929) 136 Okla. 5, 275 P. 618.

The rule controlling the consideration of the demurrer to the evidence in cases tried to the court without a jury, but which are really law or jury cases, is not the same as when a jury is present. The rule has not always been stated or clearly applied in reaching a decision on demurrers to the evidence. It, however, prevails, and has been announced in cases in our own state where careful attention is given to the issues and the rules governing the determination of the questions before the court.

In Luster et al. v. First Nat. Bank (1925) 111 Okla. 168, 239 P. 128, this court said:

"When a jury is waived in a case where the parties are entitled to a jury, the court occupies the position of a jury, and must necessarily weigh the evidence, pass upon the credibility of the witnesses, and determine the rights of the parties, and arrive at its conclusions in the same manner, governed by the same rules of evidence and procedure that govern and control a jury in their deliberations. .

"This court has passed upon this identical question in the case of Lowrance v. Henry et al. 75 Okla. 250, 182 P. 489, which differs only from the case at bar in that the court made special findings of fact, but we do not see that this would change the application of the law, because the court is under no obligation to make findings of fact except upon request, and, when a general judgment is rendered, it is presumed that the court found everything that was necessary to sustain its judgment. In the second syllabus the court said:

" 'When a trial is had before the court without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not do so at the earliest possible time when the rights of the plaintiff will not be cut off or impaired by its so doing, and when the plaintiff has introduced all his proof and rested, no right of his will be impaired if the court then determines what has been proven'."

In the case of Winans v. Harn (1929) 136 Okla. 5, 275 P. 618, the rule is stated in the first paragraph of the syllabus in the following language:

"The rule that, upon a demurrer to the evidence the court cannot weigh conflicting evidence, but must treat as withdrawn that which is favorable to demurrant, applies only to law cases where a jury is impaneled, and does not apply to equity cases and law cases where a jury is waived."

The cases of Luster v. First Nat. Bank, Porter v. Wilson, and Lowrance v. Henry, mentioned above, are cited by the court for the rule announced in the paragraph quoted.

In Penny v. Vose (1924) 108 Okla. 103, 234 P. 601, a dispute growing out of a partnership was before the court. The court said that a demurrer to the evidence in an equity case was not authorized, but, where the practice was followed, the rule in cases where a jury was authorized was inapplicable. The demurrer to the evidence is in reality a motion for judgment in favor of

the defendant upon the testimony before the court. In the opinion by Warren, J., it is said:

"None of these cases, however, apply in any way to the case under consideration here. This is purely an equity case, where the court tries the law and the facts. In such a case a different rule exists. Properly speaking, there is no such practice as that of demurring to the testimony in an equity case. This is purely practice applicable to jury cases. Baily v. Privett, 64 Okla. 156, 166 P. 150.

"Where this practice is followed in an equity case, however, the court should treat the demurrer to the testimony as a motion for judgment in favor of the defendant upon the testimony as produced by the plaintiff. Such a motion and such a consideration of a demurrer to the testimony would naturally and properly require a weighing of all the testimony introduced by the plaintiff by the judge trying the case.

"Any other rule would result in an absurdity. When the plaintiff has introduced all his testimony and rested, if upon a consideration of all such testimony the court trying the case without a jury is of the opinion that the defendant should prevail, it would be an idle thing to require the defendant to put on testimony to bolster up a case he had already won. When the plaintiff has exhausted his testimony and so announces by closing his case, it is not error for the court to weigh plaintiff's evidence and pronounce judgment for defendant where the testimony warrants."

We approach a consideration of the evidence in this case, then, in the light of the foregoing rules. An examination of the petition and the pleadings in the case also will prove helpful. The cause of action set forth in the petition and the amended petition is for the cancellation of certain instruments alleged to have been obtained through the misrepresentations of defendant Wallace. The plaintiff had possession and title to the land (an interest in which is involved herein), and the title to which she alleges is clouded by the instruments she seeks to have canceled. The action we conclude, therefore, is equitable. Also, the court tried the cause without a jury, and would be compelled as stated in the above cases to weigh the testimony and reach a decision as to where the preponderance of the testimony is at the earliest possible moment consistent with the rights of the parties.

Under the evidence we have a widow who has been a school teacher, who has owned 640 acres of land for 30 years, who has leased it before, and who necessarily has some business experience. She has used terms which are common in oil leases and royalty trading which are confusing, but she seems to have had the correct idea as to the results of the transaction upon her land after the consummation of the trade. She knew she would receive $1 for the first year and 50c the following years, and that this 50c was "royalty," according to the statement of the man with whom she traded and who she says defrauded her. She learned on October 25, 1927, when one of the instruments which conveyed mineral rights was returned by the Exchange National Bank to the Helena Bank for correction, that she had deeded away "forever" some interest in her land. After talking to the banker about the matter, writing to the Provident Royalties Corporation and the Exchange National Bank of Tulsa, and finding out that the instruments had passed beyond their control, and that they could not "be changed," she cashed a cashier's check dated October 26, 1927, which was a part of the consideration for the leases and mineral deeds for whose joint cancellation she sued in this single action, and received, on November 26, 1927, the money from the draft. These are all admissions on the part of the plaintiff which we think must have been considered and were properly considered by the trial court when the demurrer was interposed. They are undisputed facts which were brought out in the presentation of the case for the plaintiff. They are not evidence which raises an issue of fact. If the trial court had ignored them under these circumstances, it would clearly have committed error.

The experience of the plaintiff; her knowledge prior to the receipt of the balance of the consideration that mineral deeds were included in the transaction she complained of; her unsuccessful efforts to obtain the return of the said instruments; her statements that she understood that she was to have half of the royalty or one-sixteenth of the royalty after the completion of the transaction, and her final acquiescense in the condition which she complained of and the acceptance of the balance of the consideration, we hold justified the trial court in sustaining the demurrer to her evidence, and holding that all of the evidence she had offered failed to make out a case in her favor. There was no error in sustaining the demurrer to her evidence under these circumstances, and in dismissing her petition.

The plaintiff complains in the first portion

502

of her brief of the refusal of the trial court to permit the introduction of the evidence of other parties who had had other transactions with the defendant Wallace, the purpose of the evidence being to show a general plan employed by him to defraud persons with whom he dealt. This evidence was not competent, as the trial court held under the allegations of the amended petition. This ruling was therefore correct upon the record as it stood. The plaintiff conceded this by making a request for permission to amend the amended petition to charge a conspiracy, as soon as the court excluded the evidence offered as above stated. The evidence introduced did not · disclose any connection between the transactions of the plaintiff and the other witnesses, whose testimony was offered. The testimony offered did not show any connection between the transactions of defendant Wallace with the plaintiff and the transactions which the witnesses Eck and wife and Becker & Campbell offered to testify about. We think the ruling of the trial court was correct on the authority of Claggett v. Hampton (1923) 94 Okla. 252, 221 P. 707, referred to by the trial court when making his decision. In that case the court said:

"A charge of fraud in a particular transaction cannot be proved by evidence of other and independent frauds of the party charged, although in a similar transaction, unless it appears that there is such a connection between the transactions as to authorize the inference that the frauds are both parts of a general scheme or purpose to defraud. 27 C. J. 61. The plaintiff did not allege in her petition of a general scheme on the parts of the defendants Hampton and Skillen to defraud, nor any connection between the transactions in the instant case and the transactions in the Merril matter as a basis for such proffered testimony, nor is the evidence in connection with the proffered testimony sufficient to connect the same in point of time and place or otherwise with or to constitute a general scheme or purpose to defraud. Said second assignment of error is not tenable."

We think the allegations of the amendment which plaintiff sought to file were insufficient to show any connection between the various transactions of the defendant Wallace and the plaintiff with the witnesses offered, and the offered testimony was insufficient to establish a conspiracy or a general scheme to defraud. The trial court therefore committed no error in refusing to permit the amendment.

The action of the trial court in sustaining the demurrer to the evidence and dismissing the petition with prejudice is therefore affirmed.

The Supreme Court acknowledges the aid of District Judge George Crump, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.