## PENNY v. VOSE.

No. 14012—Opinion Filed Oct. 28, 1924.

Rehearing Denied Jan. 6, 1925.

Second Rehearing Denied March 24, 1925.

(Syllabus.)

**1. Trial—Demurrer to Evidence—Effect in Equity Case.**

A demurrer to the testimony is not authorized under the practice in this state in an equity case, but where such practice is followed, a demurrer to the testimony will be treated by the court as a motion by the defendant for judgment for defendant upon the testimony as produced by the plaintiff.

**2. Same—Conflicting Evidence.**

The rule that upon a demurrer to the evi-

dence the court cannot weigh conflicting evidence, but must treat as withdrawn that which is favorable to demurrant, applies only to law cases where a jury is empaneled, and does not apply to equity cases and law cases where a jury is waived. Such a rule applies only to conflicting evidence and not in any case where the evidence produced is uncontroverted.

**3. Appeal and Error—Sufficiency of Evidence—Demurrer to Evidence.**

In an equity case, where the defendant has demurred to the testimony of the plaintiff and the court has rendered judgment for the defendant after weighing the evidence, the judgment of the trial court will not be reversed unless against the clear weight of the evidence.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Anna L. Penny against R. A. Vose. Judgment for defendant, and plaintiff brings error. Affirmed.

F. E. Riddle, for plaintiff in error.

Ames, Lowe & Richardson, for defendant in error.

WARREN, J. This is an appeal from the district court of Oklahoma county rendered June 7, 1922, adjudging the defendant in error, R. A. Vose, to be the owner of certain lands therein described and quieting his title thereto as against plaintiff in error, Anna L. Penny.

It appears that prior to the controversy that culminated in this lawsuit, Oren S. Penny and Anna L. Penny, his wife, had contracted with one Gillespie to exchange certain farm lands in Grady county comprising about 600 acres, a part of which belonged to her and part to her minor children. The deal was consummated and Gillespie became the apparent owner of the farm lands and Mrs. Penny became the apparent owner of the city property. That part of the farm lands owned by Mr. and Mrs. Penny had been mortgaged by them for $15,000 prior to the exchange. On becoming the owner of the farm lands, Gillespie mortgaged them to bona fide mortgagees in further substantial sums. The city property was mortgaged prior to the trade in the sum of $35,000.

Oren S. Penny and Anna L. Penny, for themselves, and he as guardian of their minor children, brought suit to rescind the contract with Gillespie and were successful. Inasmuch as Gillespie had encumbered the farm lands to bona fide holders while he was in possession and holder of the record title, the court, upon decreeing a rescission of the contract, gave judgment against Gil-

lespie for the amount of such mortgages and adjudged a lien for the amount on the Oklahoma City property subject to prior incumbrances.

Meanwhile the American National Bank of Oklahoma City had sued Gillespie for $7,000 and attached the farm lands as his property. It recovered personal judgment against him, but its attachment failed with the judgment of rescission. This litigation was appealed to the Supreme Court of Oklahoma.

During the pendency of this litigation, foreclosure suits had been instituted against all the property, both farm and city, by the holders of the mortgages. Judgments for foreclosure, unappealed from, had been entered in these cases and during the pendency of the appeal in the rescission litigation with Gillespie, the foreclosures became ready for sale by lapse of time.

At this point R. A. Vose, who apparently sustains some official relation to the American National Bank, appears in the transaction. The sales under the mortgages were imminent; the rescission litigation was pending on appeal. There was apparently no prospect of securing a purchaser willing to pay what was against the property, to say nothing of the $7,000 bank claim. Vose had acquired the city property subject to liens.

At this point, after considerable negotiation by letter and otherwise, Mrs. Penny and Vose entered into the contract that is the subject of this litigation.

This contract was entered into by R. A. Vose as party of the first part and Anna L. Penny, party of the second part, and omitting the descriptions of the land, which are lengthy, the contract is as follows:

"Whereas, in an action in the district court of Grady county, Okla., entitled Annie Penny et al., Plaintiff, v. J. Wert Gillespie et al., 3433, on the 30th day of January, 1914, judgment was rendered in said cause, and in said judgment Annie L. Penny, Kathrine S. Penny, S. Penny and Oren Seldon Penny were given judgments against J. Wert Gillespie et al., and such judgments declared to be a lien upon the said Oklahoma City property hereinabove described, subject to all valid liens upon said property at the date of the rendition of said judgment; and

"Whereas, in the district court of Grady county, Okla., judgments foreclosing mortgages have been rendered and entered in the cases of Deming Investment Company v. Oren S. Penny et al., No. 3507, and W. T. Phillips v. J. Wert Gillespie et al., and Wm. H. McNeal v. O. S. Penny et al., No. 3506, such decrees of foreclosure having been ren-

dered and entered against the lands · hereinbefore described and more than six months has elapsed since the entering of such decrees of foreclosure, and such land is to be sold under such decrees without appraisement, and

"Whereas, the said R. A. Vose contends for some equity as against a part of said land in an action pending in the district court of Oklahoma county, Oklahoma, entitled American National Bank of Oklahoma City v. J. W. Gillespie, and

"Whereas, party of the second part is unable to pay off and discharge such decrees of foreclosure,

"Now, therefore, if said land heretofore described in Grady county be sold under orders of sale upon the foreclosure judgments heretofore mentioned, the party of the first part will purchase all of said lands at such foreclosure sales, subject to valid incumbrances and liens existing at the time said decrees were rendered, or that he will bid an amount which with incumbrances thereon will be as much as $45 per acre for said land at such sales, that if the same be purchased by him at such sales; after such sales have been confirmed and conveyances delivered to him under such sales and confirmations, he will cause to be dismissed as to said land the action of the American National Bank of Oklahoma City v. J. Wert Gillespie et al., pending in the district court of Oklahoma county, Okla., and the appeal in the cause of Annie L. Penny et al. v. J. Wert Gillespie et al., pending in the Supreme Court of the state, and will, after acquiring title under such sales, and after the dismissal of said causes of action, finance and protect said lands from further foreclosures and sales for a period of one year thereafter, and will protect such Oklahoma City property from any judgment or sale for any valid incumbrances thereon except sales under judgments against J. W. Gillespie, for a period of one year as aforesaid.

"2. It is agreed that the party of the first part shall hold the title to said land in Grady county, and to said property in Oklahoma City subject to all valid liens and incumbrances existing against said Grady county land existing at the time of the sale and confirmation under such decree of foreclosure, and all valid liens and incumbrances against said Oklahoma City property existing on the 30th day of January, 1914, except judgments against J. W. Gillespie, together with all that he may be required to pay at such foreclosure sales, or in the satisfaction and discharge of liens or incumbrances against any of such property, and his claim of $7,000, as hereinbefore mentioned, said party of the first part to be entitled to 7% interest per annum on all money advanced by him for any such purposes, and all said sums shall be the amount second party shall pay first party for all of said property.

"3. It is agreed that any part or all of said land and property may be sold or exchanged by either party at a price to be agreed upon not less than $70 an acre for said land, and $45,000 for said Oklahoma City property and in case of sale or exchange of all or any part of said property, the consideration received either in cash or other property shall take the place of the property sold or exchanged as security to the first party. All cash received shall be applied in satisfaction of sums paid by the first party as herein provided, and if any balance remain to the satisfaction of liens and incumbrances which may exist against the property sold, i. e., if any part of the Grady county land be sold, the proceeds shall be applied, if any remain, to incumbrances against such lands; if any part of the Oklahoma City property be sold, the proceeds shall be applied to incumbrances which may exist against such property. If all of such Grady county land be sold, the proceeds shall be applied to the payment of the party of the first part for all sums advanced by him, the satisfaction of incumbrances against the said land as herein mentioned and the claim of said party of $7,000 growing out of the case of American National Bank of Oklahoma City v. Gillespie et al. If any proceeds remain, same shall be applied to the liens existing against the Oklahoma City property, except judgment against J. W. Gillespie. Should all the Oklahoma City property be sold, the proceeds shall be applied to the satisfaction of liens against such property and to the payment to the first party of sums advanced by him under this contract and if any proceeds remain, the same shall be applied to the satisfaction of liens against the Grady county land. In case a part or all of the properties herein described shall be sold or exchanged under the terms and provisions of this agreement, party of the first part agrees and binds himself to convey title to the purchaser.

"4. It is further agreed that party of the first part shall be reimbursed for any sums of money paid by him for taxes, interest, or insurance on any of the property described in this agreement.

"5. It is agreed that if all of the properties herein described shall be sold or exchanged under the provisions of this contract, the proceeds derived therefrom shall be applied first to the satisfaction of valid liens and incumbrances against such property as herein mentioned and the payment to the first party of moneys advanced by him under the terms of this contract, together with the $7,000 hereinbefore mentioned, and all proceeds that shall then remain shall be the property of the party of the second part.

"6. It is further agreed that in case of sale or exchange of any of the land herein described under this agreement the party of the first part will loan to the purchaser of such land, or any part thereof, if it be

necessary to consummate a sale, the sum of $40 per acre with interest thereon at 7% per annum for a period of five years with interest at 10% per annum after maturity secured by a first mortgage on such land. In the event such Oklahoma City property shall be sold under the provisions of this contract, party of the first part will loan the purchaser if it be necessary to consummate a sale, the sum of $30,000 for a period of five years at 7% per annum, secured by a first mortgage upon such property.

"7. It is agreed that any property received in exchange for any part of the properties herein described may be sold or exchanged under the terms and provisions of this agreement the same as the property herein described.

"8. It is agreed that all money in the hands of the receivers of the respective properties herein described upon the confirmation of sales as herein provided and the dismissal of the action of Penny v. Gillespie from the Supreme Court shall be paid to the party of the first part or applied as a credit upon all sums paid by him under the provisions of this agreement and if any money remain, the same shall be applied upon the liens and incumbrances existing against the respective properties.

"9. It is agreed that the rents and revenues from the Oklahoma City property and the lands in Grady county shall be applied to the payment of current interest, taxes, and insurance for the term of this contract. At the expiration of this contract, under the terms hereof, if all the Grady county land and Oklahoma City property or property received in exchange therefor or any part thereof is not sold, or the incumbrances and sums paid hereunder by the first party adjusted and paid under the terms hereof, then the parties hereto may agree, within ten days, that this contract be continued for a longer term, and if no such agreement be made, then the second party may sell any or all of such property within ninety days, at a price sufficient to satisfy all incumbrances and sums advanced or paid by first party and in case of such sale first party will convey pursuant thereto on receipt of balance due under this contract.

"10. It is agreed that if at any time before the expiration of this contract as herein provided, all or a part of the Grady county lands be sold and the proceeds from said sales are sufficient to discharge the incumbrances against said land as herein provided and pay to the party of the first part all sums of money paid by him under the provisions of this contract, together with the $7,000 hereinbefore mentioned, and reduce the incumbrances against said Oklahoma City property to a sum not more than $30,000, that the party of the first part will convey title to said Oklahoma City property to the parties of the second part,

and accept first mortgage thereon for the sum of $30,000 at the rate of 7% per annum interest at such time for a period of three to five years, and discharge existing incumbrances not to exceed the sum of $30,000.

"Witness the hands of the parties hereto on this 30th day of January, 1915."

During the year and three months following the execution of this contract, nothing was done by Mrs. Penny to comply with its terms. There was some correspondence between Mr. Vose and Mr. Penny representing Mrs. Penny, but the money was not paid nor was the land sold.

On November 5, 1920, suit was filed in the district court of Oklahoma county by Anna L. Penny against R. A. Vose, O. S. Penny, guardian, and John Bray, asking an accounting under the aforesaid contract. She alleges that within ten days after the expiration of the contract it was agreed that all plaintiff's rights thereunder should be extended and continued indefinitely. She alleges rents have accumulated and that defendant Vose should be required to account therefor. She alleges a value of $90,000 for the city property and for the farm lands $150 per acre, a monthly rental of $750 for the one and $6 per acre per annum for the other. The prayer is somewhat vague, but the body of the petition alleges that the plaintiff is entitled to have the various properties ordered sold and that all valid liens be paid and that the remainder, if any, be paid plaintiff.

R. A. Vose answered said petition, alleging that he was the owner of all of said property, having purchased same at regular sheriff's sale under decrees of foreclosure by the terms of the contract. He further alleges that Anna L. Penny did not purchase said property or sell to another within the period prescribed by the contract and that it was an option that expired by its own terms. He further alleges that there was no consideration for the option, that it was unilateral and had not been complied with. He denies any extension of the option, but says if there was an extension, there was no consideration therefor. He further alleges illegality of a parol extension. He alleges that Mrs. Penny surrendered the premises under the contract. He prays for a judgment quieting his title and that plaintiff be restrained from claiming any interest therein.

The plaintiff replied, denying that the contract had expired and denying all other allegations of the answer. She alleges that the contract was in the nature of a partnership and is still in force. She alleges

that a consideration for said contract arose from the fact of the inclusion therein of a provision for the payment of the $7,000 due the bank for which she was in no wise liable. She alleges under the contract the defendant became a trustee to take title to the property, hold same, pending sale and account to plaintiff for all sums over the legal terms thereon. She denies the contract was an option and denies that it expired in one year and three months from its execution.

This being a suit in equity, the issues of fact were tried by the court under the provisions of sections 533 and 534, Comp. Stat. 1921. The plaintiff introduced her testimony, consisting of witnesses R. A. Vose, O. S. Penny, Annie L. Penny, J. C. Jones, W. S. Richards, and A. A. Holmes. At the close of the plaintiff's testimony, the defendant R. A. Vose demurred to the evidence for the reason that such evidence did not prove facts sufficient to entitle plaintiff to any relief, and further moved for judgment upon the pleadings and the evidence in favor of the defendant. The court sustained the demurrer and rendered judgment for the defendant.

Motion for new trial was filed and overruled and appeal perfected to this court.

Counsel for plaintiff in error rely upon two propositions for a reversal of this case. The first goes to a question of practice wherein he alleges the court erred in weighing the testimony, and the second goes to the law as announced by the court in construing this contract under the testimony offered, being admitted facts. These propositions as set out in his brief follow:

"Proposition 1. Upon a demurrer being interposed to the plaintiff's testimony, the rule is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence are admitted. The court cannot weigh conflicting evidence, but must treat the evidence withdrawn which is most favorable to demurrant."

"Proposition 2. The agreement relied upon as a basis of this action, in connection with the indisputable evidence and incontrovertible facts, constitutes an equitable mortgage in favor of the defendant and creates a trust in favor of plaintiff. Such agreement will be considered as security for the payment of the $7,000 debt provided for, and when construed as associated with the sheriff's deed, made pursuant to the said agreement and with the mortgage liens assigned to defendant, clearly creates and extends the right of redemption in plaintiff to the properties involved."

Under proposition 1 the plaintiff in error has cited the following cases to support the theory that on a demurrer to evidence all facts favorable to the defendant and all testimony from which findings might be made or from which may be drawn inferences favorable to defendant must be considered withdrawn from consideration. Taylor v. Enid Nat. Bank, 77 Okla. 74, 186 Pac. 232; Prairie Oil & Gas Co. v. Kinney, 79 Okla. 206, 192 Pac. 586; Smith v. Rockett, 79 Okla. 244, 192 Pac. 691; Midland Valley Ry. Co. v. Graney, 77 Okla. 54, 185 Pac. 1088; Fowler v. Swank, 78 Okla. 150, 189 Pac. 194; Enterburn v. Neary, 77 Okla. 69, 186 Pac. 457.

Counsel for plaintiff in error has not stated the rule in his brief in exactly this form, but this is the rule for which he contends.

An examination of the cases cited and above set out reveals that all of them were jury cases in which a jury was empaneled and sworn to try the case and each was properly a jury action. Where the testimony is conflicting in a jury case, where such jury has not been waived, the court cannot weigh conflicting testimony, but must submit it to the jury for its verdict. The reason for this is apparent, for the court cannot say what testimony the jury will accept and what it will reject. Where the testimony is conflicting and a jury is empaneled, unless the testimony of the plaintiff wholly fails to sustain some material allegation of his petition, the demurrer should be overruled. This rule does not apply, however, where the testimony is not conflicting. In that case the court even in a jury case on a demurrer to the testimony can consider the undisputed testimony that is favorable to the defendant. None of these cases, however, apply in any way to the case under consideration here. This is purely an equity case, where the court tries the law and the facts. In such a case a different rule exists. Properly speaking there is no such practice as that of demurring to the testimony in an equity case. This is purely practice applicable to the jury cases. Baily v. Privett, 64 Okla. 156, 166 Pac. 150.

Where this practice is followed in an equity case, however, the court should treat the demurrer to the testimony as a motion for judgment in favor of the defendant upon the testimony as produced by the plaintiff. Such a motion and such a consideration of a demurrer to the testimony would naturally and properly require a weighing of all the testimony introduced by the plaintiff by the judge trying the case.

Any other rule would result in an absurd-

ity. When the plaintiff has introduced all his testimony and rested, if upon a consideration of all such testimony the court, trying the case without a jury, is of the opinion that the defendant should prevail, it would be an idle thing to require the defendant to put on testimony to bolster up a case he had already won. When the plaintiff has exhausted his testimony and so announces by closing his case, it is not error for the court to weigh plaintiff's evidence and pronounce judgment for defendant where the testimony warrants.

This precise question was discussed in Tiger v. Ward, 60 Okla. 36, 158 Pac. 941, an equity case in which this court said:

"The trial court thereupon considered the whole evidence offered by plaintiff, made certain findings of fact, and gave judgment for the defendant. This action of the trial court is alleged as error, it being asserted that there was some evidence tending to support the claims of the plaintiff, and that upon a demurrer to the evidence the trial court should have eliminated all the testimony unfavorable to the plaintiff, and should have overruled the demurrer. There was no error in this action of the trial court, where the trial is to the court without the intervention of a jury and a demurrer to the evidence is interposed. The situation is not essentially different from that where the defendant rests upon plaintiff's testimony. Where the trial is to a jury, who are to determine the facts, we have frequently held that upon a demurrer to the evidence the trial court should not sustain the demurrer where there is any evidence reasonably tending to support the plaintiff's claim, but should submit the issue of fact to the jury. Where there is no jury, however, the trial court must at some stage of the proceeding determine the questions of fact, and there can be no good reason why, if the plaintiff's evidence is insufficient, he should not determine that fact at the close of the plaintiff's testimony, without requiring the unnecessary delay and expense incident to defendant producing his evidence."

In the case of Lowrance v. Henry, 75 Okla. 250, 182 Pac. 489, this court through Mr. Justice Johnson, said:

"When a trial is had before the court without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not do so at the earliest possible time, when the rights of the plaintiff will not be cut off or impaired by its so doing, and when the plaintiff has introduced all his proof and rested, no right of his will be impaired, if the court then determines what has been proven."

See, also, Lyon v. Lyon, 39 Okla. 111, 134 Pac. 650; D'Yarmett v. Cobb. 51 O'la. 113,

151 Pac. 589; Lambuth v. Stetson & Post Mill Co. (Wash.) 44 Pac. 148.

The practice should be exactly the same in an equity case as in a law case where a jury is waived. The matters are equally before the judge alone for his consideration. There could be a difference, of course, on appeal; in the equity case the judgment being sustained unless against the clear weight of the evidence, and in the law case where there was competent evidence reasonably supporting the judgment.

The only equity case holding in anywise contrary to the rule herein announced is the case of Fish v. Sims, 42 Okla. 535, 141 Pac. 980. The difference in this case and the present case is that the Commissioner writing the decision found that the trial court did not weigh the testimony, but sustained the demurrer to the testimony on a failure of proof on the part of the plaintiff, which the Commissioner held did not, in fact, exist. When the entire opinion in this case is read, it is not contrary to the holding in this case. The syllabus in that case does not properly distinguish it from a case where the decision is on the merits. The second paragraph of the syllabus in that case should have been modified to declare the rule only when it affirmatively appeared that the testimony had not in fact been weighed.

There are some decisions touching on this matter which hold that a person demurring to the testimony adopts the rule of a jury case and that exact practice should be followed, but analyzed, this procedure is not practicable. The better practice is as outlined here, to treat the demurrer as a motion for judgment, in a case tried to the court. At the close of the plaintiff's testimony the defendant should have the right to test the sufficiency of the plaintiff's evidence without submitting the whole case. This he should be allowed to do under the practice here outlined.

It having been determined that the court proceeded properly in this case in weighing the testimony, the next consideration is the second proposition of the plaintiff in error, wherein he claims the contract in connection with the sheriff's deeds constitutes an equitable mortgage, entitling the plaintiff in error to take the property upon payment of the sums alleged to be secured or to have the said property sold and the proceeds applied to the payment of the various sums specified in the contract less such rents and profits as have been secured by the defendant in error.

There were only three witnesses who tes-

tified in the case aside from those who testified solely as to rental and sale values of the property. These were Mr. and Mrs. Penny and R. A. Vose. In addition to the contract there were introduced in evidence a former proposed contract, the sheriff's deed, and various letters between Vose and Penny.

The former proposed contract. was a contract prepared by attorneys for Mrs. Penny sent to Mr. Vose for his consideration and rejected by him. for the reason that it was simply a mortgage as shown by the Vose letter returning the contract.

Lengthy and able briefs have been filed by the litigants in this case. Under proposition No. 2, the plaintiff argues that the contract, in conjunction with the sheriff's deed, constituted a mortgage for the purpose of paying the incumbrances, the $7,000 judgment and the outside necessary expenditures, with interest. This is followed by the conclusion, naturally, that assuming the transaction to constitute a mortgage, complete title could not be vested in Vose without a foreclosure.

He then argues that if. the contract is ambiguous the construction should be given it which makes it reasonable, equitable, and just.

The proposition is next advanced that, assuming the transaction to be a mortgage, it can be extended by parol. Then that a provision that the equity of redemption be waived or abrogated would be void.

All of these propositions or theories, rest on the primary proposition that the transaction constituted a mortgage except the alleged ambiguity. Unless it is held to be a mortgage, they fall of their own weight.

The plaintiff in error then announces the alternative proposition that this agreement created a trust with the plaintiff in error as a beneficiary.

In disposing of the latter theory, it is plain that there is nothing in the nature of a trust pertaining to the agreement. The money that paid for the property at the sale did not pass from Mrs. Penny, and there is no element of an express trust. There was no proof of fraud on the part of Mr. Vose. and the only suggestion of an irregular practice came from Mr. Penny himself.

It therefore remains for us to examine the contract and see if it was a mortgage when considered in connection with the facts and circumstances surrounding its execution. This is simple rather than complex. and we feel that there is nothing in the case except to examine this contract and such surrounding circumstances and say from such examin-

ation whether the judgment of the trial court that it was in effect an agreement to sell or an option and not a mortgage was against the clear weight of the evidence.

It must be remembered that we do not approach the case from exactly the same point as the trial court. We must affirm the trial court unless we can say, after an examination of the record, that its decision was against the clear weight of the evidence.

Let us first examine the contract and see if it is by its terms a mortgage, or if it is doubtful as to any of its provisions.

The first paragraph provides for the purchase of the lands at foreclosure sales by Vose, at a maximum bid, and provides for protection against other foreclosures for the period of one year.

Paragraph 2 provides that Vose shall hold title to such property subject to existing valid liens and the American National Bank judgment, and that the said sums advanced and this judgment together with 7 per cent. interest thereon "shall be the amount second party shall pay first party for all of said property."

The third, fourth, and fifth paragraphs provide that either party may arrange for a sale of the land at a specified minimum price and the application of the proceeds to reimburse Vose for his advancements, taxes, interest, and insurance.

The sixth paragraph provides that in the event of a sale of the property Vose would make a loan thereon at the terms therein specified.

The seventh paragraph provides for the disposal of exchanged property. The eighth provides for the disposition of the money in the hands of the receiver in pending litigation. The ninth paragraph provides for the application of the rents and profits to the amount to be paid Vose. The tenth and last paragraph provides for a loan to Penny by Vose on the property in a minimum amount therein specified.

This is a contract whereby Vose agrees to purchase this property and sell it to Mrs. Penny for sums specified therein, to hold it for a specified period and at the end of the period, or at any time prior thereto, to sell it to Mrs. Penny for such sum with interest less the rents and profits. There is no agreement whereby Vose can secure judgment against Mrs. Penny for the amounts advanced by Vose, indeed for most of the amounts she was never at any time liable. The contract does not make her so. No benefit of· any kind moved to Vose, for he could have

purchased the lands without the consent of the Pennys, and without this contract, so far as the testimony shows, for the same sums he did pay at the sheriff's sale.

The contract by its terms is in no sense ambiguous. It appears to us that at most this is an option or a conditional sale. Assuming without deciding that there was a sufficient consideration for this contract, we will look to the testimony to see if there is sufficient testimony in the record to enable us to say that the failure of the trial court to find that it was a mortgage was against the clear weight of the evidence.

The only testimony bearing on this point consists of the correspondence between Vose and Penny and the draft of the original contract which was rejected by Vose.

A careful reading of the letters fails, to our minds, to reveal any expressions that the contract was other than it purports to be. There was a discussion of the values of the property, the rents, prospects for purchasers, and such matters as accord with the plain terms of the contract. There is a total absence of any demand for the payment of indebtedness or of threats to foreclose. Leaving the correspondence, we find, to our minds, the most significant circumstances of the entire transaction. There was introduced and admitted in evidence during the plaintiff's case, the draft of a contract prepared by Penny, or at his instance, and sent to Vose for his signature. This contract differed from the one finally signed in the following significant particulars: The following paragraph was in the original draft in section 1 just prior to the last paragraph of said section, but was excluded from the contract as finally signed:

"Now, therefore, in order to protect the equities of the party of the first part in such Oklahoma City property, and in his claim asserted in the case of American National Bank v. J. Wert Gillespie et al., and in order to protect the equities of the parties of the second part in the land hereinbefore described as belonging to them, and the equities of the judgments declared to be a lien against the Oklahoma City property rendered in the case of Penny v. Gillespie, it is agreed by and between the parties hereto as follows:"

In the second paragraph, after the words "January, 1914," there was included in the first contract the following clause, not included in the latter:

"As security to said party of the first part for all sums which he may be required to pay at such foreclosure sales."

The following language at the close of section 2 in the signed contract did not appear in the original draft:

"And all said sums shall be the amount second party shall pay first party for all of said property."

In the original draft there was another section numbered 11 which was eliminated from the contract as finally signed: this section was as follows:

"It is agreed that at the expiration of this contract under the terms hereof, if all of said Grady county land and Oklahoma City property is not sold, or the indebtedness and the sums due the party of the first part adjusted and paid under the terms and provisions of this contract, then such property, whether lands or Oklahoma City property, remaining unsold shall be sold by the party of the first part within 90 days thereafter at the best price obtainable on the market and the proceeds from such sale or sales shall be applied by the party of the first part to the payment of the remaining liens and incumbrances against such property, and the balance of such sums as may be due the party of the first part as provided in this contract, and the balance, if any, shall be paid to the parties of the second part."

There were other slight, immaterial differences between the contracts. It appears that not only did Vose carefully eliminate from the original draft all provisions that indicated it to be a mortgage or that it was security, but also included a clause that provided it was to be a sale.

The testimony shows that Mr. Vose refused to sign the original draft for the reason that it was in effect a mortgage and that he did not want a mortgage. The contract as finally signed was then agreed upon.

We think this testimony absolutely conclusive, that the contract here in litigation was therefore never intended as a mortgage by either party. Mr. Penny tried to get a contract signed which might have been so construed, but when Vose refused, he signed the latter agreement with the security features eliminated and with sale features inserted. It is apparent, therefore, that at its signing this contract was not regarded as a mortgage by either party. It is not a mortgage by its plain terms, and the above recited most potent facts were before the trial court in weighing the testimony.

In view of these circumstances, we say that the judgment of the trial court was not only not against the clear weight of the evidence, but was in accord therewith.

The judgment will therefore be affirmed.

NICHOLSON, BRANSON, HARRISON, and LYDICK, JJ., concur.