### WADSWORTH et al. v. NEHER et al.

No. 20022. Opinion Filed July 16, 1929.

Rehearing Denied Sept. 10, 1929.

Walter S. Mills, for plaintiffs in error.

Willis Cooke, County Attorney (G. W. Cornell, of counsel), for defendants in error.

CULLISON, J. This case comes to this court on appeal from the district court of Custer county, Okla. Plaintiffs in error were plaintiffs in the court below, and defendants in error were defendants below, and will be referred to as in the trial court.

This action is to perpetually enjoin the board of county commissioners of said county from issuing or selling certain road bonds which were voted for by a large majority of the voters on the 27th day of February, 1928, and from letting any contracts for roads or bridges.

Plaintiffs in their petition allege that on the 27th day of February, 1928, an election was held in said county and state to vote $900,000 road and bridge bonds; that 5,028 votes were cast for the bonds and 2,537 votes against the bonds; that the election was void and illegal because special election officers were appointed by the county commissioners; that the balloting was not kept secret in the four Clinton precincts; that the voting places in Clinton were all in one building; that no railing separated the public from the election officers; that a group of colored people went into a booth with a white man who was not an officer and were voted by him in said precinct; that no official registration books were at the polls or used by the election officers; that in said four Clinton precincts 2,187 votes were cast for the bonds and 28 votes were cast against the bonds; that said election was not carried by 60 per cent. of legal voters voting thereat and that widespread fraud, corruption, illegality, and irregularities were practiced at said election; and that 2,500 illegal votes were cast.

The defendants filed their answer, in which they allege that the election was regularly held, admitting the corporate capacity of Custer county, Oklahoma, and denying all other material allegations.

Trial was had. Defendants demurred to plaintiffs' evidence; the court sustained the demurrer and rendered judgment for defendants, denying the injunction. Motion for new trial filed and overruled.

Plaintiffs appeal to this court and allege ten different assignments of error. They elect to discuss all ten assignments of error together. Plaintiffs' first assignment of error, which we deem to be the basis of all alleged errors, reads as follows:

"The court erred in sustaining defendants' demurrer to plaintiffs' evidence."

Plaintiffs contend that "the whole conduct of this election, beginning with registration and ending with the making of the returns, especially in the four precincts of Clinton and in precinct No. 2 of Clinton township, was so impregnated with fraud, corrupt practice, illegality and irregularities and gross violation of both mandatory and direct pro-

visions of the statute as to render said election void."

It will be observed that plaintiffs base their entire contention on the illegality, irregularities, and gross violation of the provisions of the statute regulating registration, and as to the manner and place of voting at said election.

It is obvious from a careful reading of the record that many irregularities did occur with reference to the registration of voters, and in this connection plaintiffs contend that the provisions of our registration law are mandatory and must, therefore, be strictly complied with.

In Town of Grove v. Haskell, Governor, et al., 24 Okla. 707, 104 Pac. 56, the court held:

"The provisions of section 2, art. 3, c. 31, p. 329, Laws of 1907-1908, prescribing the duties of the county election board in the preparation of ballots, are mandatory as to such board, and should be observed by a special election board, charged with the same duties; but, where such special election board ignores some of these provisions, and prepares ballots different in form and detail from those prescribed, but distributes the same uniformly throughout the county, and they are received by the electors, and by them in good faith cast, they will not, in the absence of fraud, be disregarded and an election held therewith annulled."

"Elections are the ultimate expression of the sovereign will. When fairly expressed —that is, free from taint of fraud or charge of improper conduct—it becomes the duty of courts to sustain them, where it can be done by a liberal construction of the laws relating thereto, rather than defeat them by requiring a rigid conformity to technical statutory directions, which do not affect the substantial rights of the electors. All reasonable presumptions as to their regularity will be indulged, and the penalty of disfranchisement will not be visited upon a qualified voter where he is not at fault, except in response to a plain mandatory requirement of the statute."

The court in the body of the opinion, quoting from State ex rel. Mullen v. Doherty, 16 Wash. 382, 47 Pac. 958, said:

"The vital and essential question in all cases is whether the want of statutory notice has resulted in depriving sufficient of the electors of· the opportunity to exercise their franchise to change the result of the election."

The Supreme Court of Indiana, in the case of Jones v. State ex rel. Wilson, 153 Ind. 440, 55 N. E. 229, said:

"All provisions of the election law are mandatory if enforcement is sought before the election in a direct proceeding for that purpose; but after election all should be held to be directory only, * * * unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election or that its omission shall render it void."

In Peabody v. Burch et al., 75 Kan. 543. 89 Pac. 1016, the Supreme Court of Kansas, speaking through Mr. Justice Mason, held:

"Although mandatory provisions of the statute are disobeyed in the preparation of the official ballot, the will of the voters expressed by means thereof cannot, on that account, be disregarded."

We cannot agree with the contention of plaintiffs that the acts complained of, even if mandatory, are really essential to the validity of an election, or that irregularities on the part of the county and state registrars in registering the voters will necessarily render the election void in the absence of fraud, or unless sufficient illegal votes were cast, as a result of such acts, to change the result of the election.

Plaintiffs contend that when their evidence was closed, sufficient evidence had been introduced to shift the burden at least on the defendants to purge the election of illegality and corruption.

In Kimerlin et al. v. Board of Com'rs of Garvin Co., 78 Okla. 142, 189 Pac. 361, the court held:

"Where it is sought to review the validity of an election on the ground of illegal voting, those seeking to overcome the result as declared by the election officers have the burden of proving, not only that illegal votes were cast in sufficient number to change the result, but by whom and for whom, or for what issue or question submitted, such votes were cast."

Plaintiffs, in support of their contention that the election was fraudulent, corrupt, and illegal, set out many pages of testimony, which we assume to be all the important and competent evidence upon which they rely. We are of the opinion that the record fails to establish the allegations of fraud and corruption urged by plaintiffs.

Plaintiffs further contend that the court erred in sustaining defendants' demurrer to plaintiffs' evidence.

In the case of Penny v. Vose, 108 Okla. 103, 234 Pac. 601, our court laid down the

rule fully as to the question of a demurrer to the testimony in an action to set aside an election on the ground of illegal voting, and held:

"A demurrer to the testimony is not authorized under the practice in this state in an equity case, but where such practice is followed, a demurrer to the testimony will be treated by the court as a motion by the defendant for judgment for defendant upon the testimony as produced by the plaintiff."

Further on in the body of the opinion, the court used the following language:

"There are some decisions touching on this matter which hold that a person demurring to the testimony adopts the rule of a jury case and that exact practice should be followed, but, analyzed, this procedure is not practicable. The better practice is as outlined here, to treat the demurrer as a motion for judgment, in a case tried to the court. At the close of the plaintiff's testimony the defendant should have the right to test the sufficiency of the plaintiff's evidence without submitting the whole case. This he should be allowed to do under the practice here outlined."

Plaintiffs by their evidence have shown that many registration certificates were in various ways irregularly issued to voters, but, in the absence of fraud, plaintiffs, in order to sustain their contention, must establish that sufficient number of illegal votes were cast to change the result of the election.

In the case of John Gilliland et al. v. City of Clinton, reported in 131 Okla. 186, 268 Pac. 254, the court very clearly announces the rule of law as to the necessity of showing sufficient illegal votes cast to change the result of an election, in an action to set aside an election on the ground of illegal voting:

"In an action to set aside an election on the ground of illegal voting, the burden of proof is upon those seeking to set aside the election to show that sufficient illegal votes were cast to change the result of the election, and, in the absence of such showing, the election will not be held invalid."

The certificate of election returns, as shown by exhibit 2 (C.-M 94), discloses that the votes cast by the duly qualified voters of Custer county were as follows:

"Total number of votes cast in favor of the proposition _____5028

"Total number of votes cast against the proposition _____2537

"Total number of mutilated ballots __ 12

"Total number of votes cast _____7577

"The board further finds that the lawful three-fifths majority of voters, voting in said election, were cast in favor of issuing the said bonds." (C.-M. 96-7).

Counsel for plaintiffs and defendants entered into a stipulation (C.-M. 1383) reading as follows:

"By Mr. Murphy: It is agreed that exhibit 'X' be received in evidence as a tentative list of 593 voters, who, plaintiffs claim, have been illegally registered. The list is received, however, with the understanding by all parties that it has been compiled from documents and records already in evidence, each party reserving the right to call to the attention of this court, or to the appellate court, and any errors made in the compilation of said list. Unless such errors are discovered, it is understood that said list is to be treated as evidence for the purpose for which it is offered.

"By Mr. Franklin: That is satisfactory"

—said stipulation bearing signatures of attorneys for plaintiffs and defendants.

Plaintiffs on page 11 of their brief say:

"We did not show enough illegal voting to change the result of the election and do not wish to present this brief on the theory that enough illegal votes were shown to of themselves change the result."

The record bears out this statement. Admitting that the list of 593 voters, received in evidence by stipulation of the attorneys in this case, were illegally registered, still the bonds carried by 60 per cent. of the legal voters voting at the election.

Under the authorities above cited, the plaintiffs having failed to show sufficient illegal votes cast to change the result of the election, and having failed to establish their allegations of fraud and corruption, the election will not be held invalid.

In Penny v. Vose, supra, this court held:

"In an equity case, where the defendant has demurred to the testimony of the plaintiff and the court has rendered judgment for the defendant after weighing the evidence, the judgment of the trial court will not be reversed unless against the clear weight of the evidence."

After a careful examination of the entire record in this case, we are of the opinion that the trial court did not err in sustaining defendants' demurrer to plaintiffs' evidence, and the judgment of the lower court is, therefore, affirmed.

MASON, C. J., LESTER, V. C. J., and CLARK, HUNT, SWINDALL, and ANDREWS, JJ., concur.

RILEY and HEFNER, JJ., absent.