Fanny Lou HENDERSON, Guardian of Carolyn Renee, Carole Lee, John Nathaniel and Holly Lou Henderson, Plaintiff in Error,

v.

Michille GIFFORD, individually and as Trustee and Executrix of the Estate of Jessie Henderson, deceased, Defendant in Error.

No. 37639.

Supreme Court of Oklahoma.

Nov. 19, 1957.

Howard Young, Nat Henderson, Stigler, for plaintiff in error.

Windham & Windham, Poteau, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the proceeds, in the amount of $10,000, of a policy of National Service Life Insurance, issued to Jessie Henderson, an unmarried former WAC, of Stigler. Said insured first obtained such insurance in 1948, and later had it converted to the particular "Five-Year Level Premium" policy that was issued to her on August 1, 1952, and, is involved in the subject action.

Originally the insured had designated her mother, Mrs. Lula F. Henderson, as principal beneficiary, and her sister, Mrs. Michille Gifford, the defendant in error, and her brother, Nat Henderson, a Stigler attorney, as first and second contingent beneficiaries, respectively. The mother died February 9th, 1949, leaving to the insured the family home in which the two had been residing. Thereafter, by the insured's execution and forwarding to the Veteran's Administration, one of said Administration's "Designation or Change of Beneficiary" forms, dated April 1, 1949, her original designation of her mother as "Principal", or "1st", beneficiary was superseded and nullified by designation of Mrs. Gifford as such beneficiary, without any words appearing on said designation to indicate that it was, in any way, qualified or conditional.

When the insured thereafter died, on May 28, 1954, at Mrs. Gifford's home in Fort Smith, Arkansas (where she had gone on a visit a few days before) she left a will naming her as executrix of her estate, but bequeathing and devising her, and each of said testatrix' adult heirs, no part of her estate except the sum of $1. Under the terms of said will, all of the rest of her estate, consisting of household furnishings and a modest sum of money, and including the home her mother had left her, were to go, after payment of her just debts and funeral expenses, to her nieces, Carolyn Renee Henderson, Carole Lee Henderson, Holly Lou Henderson, and a nephew, John Nathaniel Henderson, all of whom are the minor children of plaintiff in error and her attorney husband, the aforementioned Nat Henderson. At some time (not definitely or exactly shown) after the insured's above-described change of her NSLI policy's beneficiary, there appears to have developed some question, difference of opinion, and/or controversy between the Nat Henderson family and the sister, Mrs. Gifford, as to whether the latter was intended to receive the proceeds of said policy for her own exclusive use, and as a true beneficiary thereof, or whether she was intended to receive said money merely as trustee for the above-named minors. At any rate, it does not appear that Nat Henderson and his wife, the plaintiff in error, became open adversaries of Mrs. Gifford

over this issue until after the insured's death and after said attorney began assisting in obtaining disbursement, from the Veteran's Administration, of the proceeds of the subject policy. On June 4, 1954, he wrote said Administration, hereinafter referred to merely as the "VA", asking it to "forward necessary forms on which beneficiary can make claim" for the benefits due under said policy, and, in his letter expressed the belief that "Michille Gifford * * * is named first beneficiary", and asked that said agency "confirm this and give us the names of the beneficiaries in the order of their appearance on the policy." Pursuant to this letter, Mrs. Gifford was forwarded two duplicates of VA form 8–4125, entitled "Claim for Life Insurance" to be executed by her, upon filling in certain blank spaces with information called for therein, and then returned to the VA. One of these forms, executed by Mrs. Gifford, has, since shortly after its execution and until introduced into the evidence of this case, reposed in the office files of Nat Henderson, while the other was returned to the VA, which thereafter disbursed the face amount of said policy in the sum of $10,000 to Mrs. Gifford, in September, 1954. In the meantime, Mrs. Gifford had qualified and entered upon the performance of her duties as executrix of the insured's estate.

In December, 1954, plaintiff in error obtained appointment as her afore-named minor children's guardian. In January, 1955, Mrs. Gifford, as executrix, filed her final account and petition for distribution to said children of all of the insured's estate, with the exception of the $1 bequests hereinbefore described, without mentioning therein the insurance proceeds involved herein.

When plaintiff in error instituted the present action in June, 1955, as plaintiff, in her capacity as guardian of the above-named minor children, to impress the afore-described insurance funds in Mrs. Gifford's possession, with a trust in favor of said children, she named Mrs. Gifford, the defendant therein, in both her individual capacity and that of executrix of the insured's estate. In her petition and amended petition, plaintiff in error, hereinafter referred to as plaintiff, alleged facts generally contemplated to show that, before the insured's death, Mrs. Gifford, hereinafter referred to as defendant, was trustee of said policy's proceeds for plaintiff's minor children, rather than beneficiary of said funds. In support of such allegations, plaintiff therein referred to a certain typewritten and unsigned statement appearing on the back of said policy and claimed to have been written therein at the behest, and as the statement, of the insured. Said statement on said policy, which was attached to plaintiff's pleadings as an exhibit, and later introduced in evidence at the trial, is as follows:

"On this date, February 16, 1954, my will has been changed to include my little niece, Holly Lou Henderson, to share in all of my estate, both real and personal, and, of course I want her to share equally with my other nieces, Carolyn Renee and Carole Lee Henderson, and my nephew, John Nathaniel Henderson, in the principal amount of this policy in the event of my death. I have named Michille Gifford, my sister, as executrix of my last will and testament and have told her all of my estate, both real and personal, and benefits from this policy is for the education, support and maintenance of my nieces and nephew, above named. All of this is in keeping with the express wishes of my beloved mother, and to express the love and affection both of us have for these children. In the event Michille Gifford cannot carry out my wishes, I have named my brother, Nat Henderson, as second beneficiary of this policy."

In her answer to plaintiff's above-described pleadings, the defendant, among other allegations unnecessary to mention, denied that her entitlement and receipt of the $10,000 insurance policy benefits, was in the capacity of a trustee for plaintiff's children, or for any other person or persons, rather than as sole beneficiary; and she specifically

denied that, at the time of the insured's death, her policy had written on it, the above-quoted statement.

At the trial, plaintiff presented various witnesses, some of whom were friends and acquaintances of the insured and others who were relatives, including plaintiff herself, her attorney husband, and two of their above named daughters, who related various statements the insured reportedly made (especially after her mother's death) calculated to show the insured's fondness and concern for the minors, who are the claimed actual, or really intended beneficiaries of the insurance policy. From some of such testimony, much of which was objected to as hearsay or as generally incompetent, it might be inferred that the insured's interest in said children was concurred in, or shared, by her mother during her life, and that, after the latter's death, one of the insured's principal purposes in life was to assure the fulfillment of this common desire to leave everything the two had accumulated, or preserved, to them. Some of the testimony seems to indicate that the insured believed there woud be more assurance, after the mother's death, of this common plan for the children being carried out, by entrusting its fulfillment to Mrs. Gifford (who, according to one conversation related, had ample funds of her own) rather than to her brother, Nat Henderson, the children's father, who, according to one of the related conversations, was inclined towards investing of surplus funds in cattle.

One of the sharpest conflicts in the testimony concerned the hereinbefore quoted typing on the back of the policy. According to plaintiff's witnesses, for a considerable period before her death, the insured had kept the policy, with her will and other valuables, in a lock box in a closet of her home, and had, in substance, told several persons, including the plaintiff and those of her children who testified, that all she owned, and everything in the box, would go, or belong, to the children at her death. The plaintiff testified, in substance, that before the insured left her home in Stigler for her last visit with her sister, as aforesaid, knowing that she had a serious physical condition that might suddenly prove fatal at any time, she gave said witness the key to her house and showed her where she kept hidden, in the aforesaid closet, the key to the lock box. According to plaintiff's evidence, it was there that the policy remained until the box was opened, after the insured's death, by means of the key she had pointed out to plaintiff, as aforesaid. That the insured had the policy in her possession continuously from the time it was issued and delivered to her was a circumstance tending to support, in part, the testimony of plaintiff's husband, Nat Henderson, that the insured had the policy with her when she came to his office and procured the typing of the above-quoted statement on the back thereof. To the contrary, the defendant testified that the insured had, shortly after its issuance in August, 1952, brought the policy to her home in Fort Smith for her to keep, telling her that she was the beneficiary thereof; that it then had no such statement or writing on it; and that it thereafter remained in her possession in her Fort Smith home at all times until after the insured's death, when she took it from Fort Smith to Stigler with her on the occasion when the insured's lock box was opened, and her will was taken out of it, and read. (This testimony was corroborated in part by Ida Snyder, a registered nurse, who had worked in Mrs. Gifford's home). The defendant further testified that she handed the policy to Nat Henderson, in his office, before going to the insured's home for the reading of the will.

Most of the other witnesses related remarks they had heard the insured make indicating her intention, or desire, to leave everything in general, or the insurance money in particular, to, or to be used for the benefit of, the children.

During the non-jury trial, the trial judge, at the close of plaintiff's evidence, sustained the demurrer that Mrs. Gifford interposed in her capacity as executrix. At the close of all the evidence he sustained a demurrer thereto and motion for judgment interposed in her capacity as an individual; and ren-

dered judgment holding that no trust existed as to the insurance policy's proceeds, and denying plaintiff any relief whatsoever. After the overruling of her motion for new trial, plaintiff perfected the present appeal.

The general tenor of the argument advanced by plaintiff for reversal of the trial court's judgment is that the evidence, when considered in the light most favorable to her, was sufficient to show that defendant was a trustee, rather than merely a beneficiary, of the insurance funds involved. In her brief, it is claimed that the only testimony tending to refute the "clear weight of the evidence" establishing the proceeds of the policy as a trust for the benefit of the Henderson children, other than that of a former business associate of defendant's husband, was that of the defendant herself. Counsel then attacks the credibility of defendant's testimony and attempts to show, by numerous circumstances and by asserted inconsistencies and contradictions therein, that it was not worthy of belief. We deem it unnecessary to describe this line of argument in detail, for we consider such circumstantial evidence, as opposed to contradictory direct evidence, insufficient to render the trial court's judgment clearly against the weight of the evidence, which is the standard governing appellate review of cases of equitable cognizance, of which type plaintiff recognizes the present case is. Hitt v. Hitt, Okl., 258 P.2d 599; Biggs v. Federal Land Bank of Wichita, 186 Okl. 99, 95 P.2d 902; McCoy v. McCoy, 30 Okl. 379, 121 P. 176, Ann.Cas. 1913C, 146; McCallum v. Anderson, 10 Cir., 147 F.2d 811; Appleman, "Insurance Law and Practice", Vol. 20, sec. 11531. Nor, in such a case, does the trial court, in ruling upon a demurrer to the evidence, follow the rule used in plaintiff's argument. Instead of disregarding all evidence supporting the demurrant's position, and considering only the evidence favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and overruling the demurrer, if from such consideration, there is any evidence reasonably tending to support plaintiff's cause of action, the trial court, in an equity case, considers and weighs all of the evidence and determines in whose favor it preponderates. Biggs v. Federal Land Bank of Wichita, supra; Penny v. Vose, 108 Okl. 103, 234 P. 601, 604, 605.

The only things in the nature of direct evidence that plaintiff offered to show that, before the decedent's death, a trust was created of her insurance policy's benefits, by parol and/or in writing, were the typewritten statement on the back of the policy and the testimony of plaintiff herself, concerning a conversation which she said occurred in the kitchen of Mrs. Gifford's Fort Smith home, on May 7, 1954. If, as hereinbefore shown, Mrs. Gifford testified (corroborated in part by Ida Snyder) the decedent brought the policy to defendant's said Fort Smith home in August, 1952, and said policy remained in her possession there at all times thereafter, until after the decedent's death, when defendant brought it to Mr. Henderson's office in Stigler, at which time it did not have the typing on it, then, of course, the typing could not have been done when, and under the circumstances testified to by Mr. Henderson. Nor could the policy have remained during the same period, in the decedent's home, or in her possession at Stigler, as indicated by the testimony of some of the plaintiff's other witnesses. It will thus be observed that there was a direct conflict in the evidence as to this writing.

As to the conversation in Mrs. Gifford's kitchen in May, 1954, there is not the same kind of a conflict. As a witness in her own behalf, Mrs. Gifford was never interrogated, nor testified, concerning it, but, during her direct examination as a witness for the plaintiff, she in effect, denied that such a conversation ever occurred when she named "* * * February about the 16. * * *" as the date the decedent told her she had had her will changed, and further testified: "* * * That is the last time she and I discussed her policy." While we are aware of the many decisions showing that positive, uncontradicted and unimpeached testimony may be binding on a trial court, as well as a jury (see cases digested

in 6A Okl. Dig., Evidence, ☜594), we think the situation above described comes within one, or more, of the qualifications of the rule, and has the effect of withholding from plaintiff's testimony concerning the conversation, the binding force which otherwise it might have, if it was clear, cogent and convincing. Said rule as stated in Taggart v. Snipes, 174 Okl. 449, 50 P.2d 640, is as follows:

"Where the positive testimony of the witness is uncontradicted and unimpeached, *whether by other positive testimony or by circumstantial evidence,* either intrinsic or extrinsic, and where it is not inherently improbable, either in itself or in connection with other circumstances, or *where it does not contain contradictions in itself or with other evidence* satisfying the court or jury of its falsity, it cannot be disregarded and must control the decision of the court or jury." (Emphasis ours.)

We recognize that a constructive or resulting trust may be established by oral testimony, but such evidence must be clear, cogent and convincing. Kemp v. Strnad, Okl., 268 P.2d 255. Here, plaintiff's position at the trial may be described similarly to that of the plaintiffs in Gaines v. Gaines, 207 Okl. 619, 251 P.2d 1044, 1047, wherein this court remarked:

"In making these contentions plaintiffs are confronted with two well established rules of law, one with reference to the burden and quality of proof required to establish a resulting trust, and secondly that in cases of equitable cognizance the judgment of the trial court that plaintiffs have not met their burden of proof will not be set aside unless clearly against the weight of the evidence."

We also recognize that the defendant testified that when the decedent brought the policy to her home, the following occurred: "She said, 'Michelle, it's yours, and nobody can touch it.' And she said, 'I'll tell you what I want, if any of the family gets sick I would like for you to take care of them, if you understand the circumstances.' She said, 'If any of the family gets sick, if they need anything I want them taken care of. You now will have the money.' " We do not think however that anyone would contend that the above testimony was sufficient in itself to establish the creation of a trust exclusively for the Henderson *children,* even under precedents specifically recognizing that such a trust can be created, with reference to the proceeds of an insurance policy, by oral agreement between the policy's named beneficiary, and the insured, and that such an agreement is enforceable as a contract. See Ballard v. Ballard, Tex. Civ.App., 296 S.W.2d 811; Parks' Ex'rs v. Parks, 288 Ky. 435, 156 S.W.2d 480, 486; Camperi v. Chiechi, 134 Cal.App.2d 485, 286 P.2d 399, 414; French v. French, 161 Kan. 327, 167 P.2d 305; Legrande v. Legrande, 178 S.C. 230, 182 S.E. 432, 102 A.L.R. 582, and the Annotations thereto; 29 Am.Jur., "Insurance", sec. 1281; and Appleman, "Insurance Law and Practice", Vol. 2, sec. 884, note 24. In this connection, notice Childers v. Breese, 202 Okl. 377, 213 P.2d 565. Unlike the situation in Kline v. Kollman, 79 Okl. 179, 192 P. 208, it appears that the trial court, in sustaining defendant's demurrer and motion for judgment in the present case, although making no specific or exclusive finding of fact, nevertheless "weighed the evidence as upon final submission" and determined the issues of law and fact in defendant's favor by concluding "that no trust existed. * * *". This embodied a finding of everything necessary to sustain the judgment in accord therewith. Bartlett v. Lashley, 204 Okl. 299, 229 P.2d 185; Garrett v. Reinhart, 169 Okl. 249, 36 P.2d 884.

■ Having carefully examined the entire record and concluded, as above indicated, that the trial court's judgment was entered upon the basis of conflicting evidence as to the principal issues involved, and that said judgment cannot be regarded as clearly against the weight of the evi-

dence, we must, under the foregoing authorities, affirm said judgment.

It is therefore so ordered.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.