Noble GROVES, Clifton McKee, Doyle Turner, and Dr. Roy W. Anderson, Plaintiffs in Error,

v.

The BOARD OF COUNTY COMMISSIONERS, WASHITA COUNTY, State of Oklahoma, Ernie Morris, County Treasurer, Washita County, State of Oklahoma, Virgil Dunn, County Assessor, Washita County, State of Oklahoma, Dale Hubbard, County Clerk, Washita County, State of Oklahoma, Ken Wesner, Chairman, Washita County Election Board, Ken Wesner, Chairman, Washita County Industrial Committee, Defendants in Error.

No. 42306.

Supreme Court of Oklahoma.

June 27, 1967.

Rehearing Denied July 18, 1967.

Eph Monroe, Clinton, for plaintiffs in error.

Paul C. Bruan, Dist. Atty., Fred H. Anderson, Asst. Atty., Wesner & Wesner, Bailey & Jones, Walter Foth, E. N. Sassen, Cordell, John Perry, Sentinel, for defendants in error.

DAVISON, Justice.

The parties to this appeal occupy the same relative positions in this court as they had in the lower court and will be referred to by their lower court designation of "plaintiffs" and "defendants."

The lower court sustained defendants' demurrer to plaintiffs' first amended petition (herein referred to as "petition") on the grounds that such petition failed to state facts sufficient to constitute a cause of action against the defendants. Plaintiffs elected to stand on said petition and declined to plead further, and the court dismissed the action. Plaintiffs have perfected an appeal to this court.

Plaintiffs' action sought a judgment in the lower court adjudging that $1,250,000 in bonds, purportedly voted by the taxpayers of Washita County pursuant to Article 10, § 35, of the Oklahoma Constitution for the purpose of securing and developing industry in said county, were void, and to restrain and enjoin the issuance and sale of said bonds. The petition alleged that the Board of County Commissioners of Washita County called a bond election to vote on said bonds on August 23, 1966, and that said Board announced a total of 2424 votes were cast in the election, of which 1233 votes were in favor of the bonds and 1191 votes were against the bonds, and proclaimed the bonds had been approved by a majority of 42 votes. The petition also alleged that only qualified taxpaying voters had the right to vote at the election. (Art. 10, § 35, supra); that among those voting at the election were 136 named and listed individuals who "were not qualified, tax-paying voters of Washita County;" and that the named and listed voters had not actually paid taxes on property within the county, nor did they have a legal tax receipt therefor dated within 12 months prior to such election. The petition further stated as follows:

"* * * and further allege and state that the votes cast by the attached list of voters were illegal and void, and that said illegal and void votes cast in said election could and did have an effect upon the outcome of said election; and that Plaintiffs further allege that had only the qualified, tax-paying voters of Washi-

ta County been permitted to vote on the proposition as set forth in the Notice of Election, that the said proposition would not have carried, and that the election outcome was effected by the said illegal and void votes cast therein and that had only those qualified, tax-paying voters been permitted to vote, that the said bond election held on the 23rd day of August, 1966, in Washita County would have failed to pass."

Plaintiffs cite Henrie v. Griffith, Okl., 395 P.2d 809, and other cases for the proposition that when the sufficiency of a petition is challenged by a demurrer, such petition must be liberally construed in favor of the plaintiff, and all facts well pleaded together with all inferences which may be reasonably drawn therefrom must be taken as admitted to be true for the purpose of the demurrer. Plaintiffs urge that, under this rule of law, the demurrer admits as true the allegations that, there were 136 illegal voters, and their votes did have an effect upon the outcome of the election, and had only qualified voters been permitted to vote, the proposition (approval of the bonds) "would not have carried." They contend these allegations of fact and law are sufficient to state a cause of action.

■ The answer to this contention is that a demurrer does admit all facts well pleaded in the petition together with all inferences that may be reasonably drawn therefrom, but it does not admit facts which are not pleaded, or conclusions of fact or law which are not supported by the allegations of evidentiary facts in the petition. State ex rel. Nesbitt v. Liberty National Bank and Trust Company, Okl., 414 P.2d 281, 284, and Burger v. Richards, Okl., 380 P.2d 687.

The general allegations that the illegal and void votes *could* and *did* have an effect on the *outcome* of the election and that had only qualified taxpaying voters been permitted to vote the proposition (bonds) *would not have carried* are conclusions of fact. What allegations of evidentiary facts

appear in the petition to support these conclusions?

■■ The petition alleges that the election resulted in approval of the bonds by a majority of 42 votes and that of the 2424 votes cast in the election there were 136 illegal votes. On the basis of these allegations the number of illegal votes was such that they *could* have changed the result of the election. However, there are no allegations in the petition as to the number of the alleged illegal votes cast in favor of the bonds and against the bonds. As a consequence of this omission in the allegations the petition fails to reflect that of the votes cast *in favor of the bonds* a sufficient number thereof were illegal votes, and thereby support the conclusion that the bonds failed to receive a majority of the legal votes. It is logical that the illegal votes not cast in favor of the bonds must have been cast against the bonds. This would reduce the number of votes cast against the bonds. With the petition in this state it was *impossible to determine exactly* or by inference from the allegations that the illegal votes resulted in the bonds not receiving a majority of the legal votes. There were no allegations of evidentiary facts to support the above conclusions.

In Robertson v. Board of County Com'rs, 14 Okl. 407, 79 P. 97, it is stated as follows:

"A petition in an action to contest an election which alleges generally that the judges and clerks of election permitted a certain number of illegal votes to be cast in favor of a certain town for county seat, and that without such illegal votes the plaintiffs' candidate would have been elected, and setting out the number of votes which the petitioner claims each candidate legally received, and which, if correct, would give to the petitioners' candidate a majority of all of the legal votes cast, is not sufficient to state a cause of action. The pleader must set out the facts from which the court can say, as a matter of law, that the votes were illegal, and that without such illegal votes the result of the election would

have been in favor of plaintiffs' candidate."

This court has further held that in an action to set aside an election on the ground of illegal voting, in the absence of allegations of proof of fraud, the burden of proof is upon those seeking to set aside the election to show, not only that illegal votes were cast sufficient to have changed the result of the election, but they must show by whom and for whom, or for what issue or question submitted such votes were cast. Gilliland v. City of Clinton, 131 Okl. 186, 268 P. 254; Wadsworth v. Neher, 138 Okl. 4, 280 P. 263, 264; Dunagan v. Town of Red Rock, 58 Okl. 218, 158 P. 1170.

It is our conclusion the petition was insufficient because it failed to allege facts showing that elimination of the illegal votes would result in the bonds receiving less than a majority of the legal votes cast in the election.

The lower court did not err in sustaining the demurrer to the amended petition.

Affirmed.

All the Justices concur.