**BENJAMIN COLITZ & CO. v. DAVIS.**

No. 23819.  Oct. 13, 1936.

Max G. Cohen, Frank Hickman, and. Irvine E. Ungerman, for plaintiff in error.

Silverman & Rosenstein, for defendant in error.

PER CURIAM. This action, filed in the district court of Tulsa county, Okla., was for damages for the purchase price of secondhand pipe in the sum of $6,865.05 by the plaintiff in error. The defendant in error answered, and the issues were joined, and at the trial both parties waived a jury and tried the cause to the court. At the conclusion of the plaintiff in error's case, the defendant in error demurred to the evidence and the same was sustained by the trial court. The plaintiff in error appeals to this court. For convenience the parties will be referred to as they appeared in the trial court, the plaintiff in error as plaintiff and the defendant in error as defendant.

The plaintiff is a Chicago, Ill., corporation, engaged in the buying and selling of secondhand pipe, and had been engaged in the business for a number of years. Likewise, the defendant was engaged in the secondhand pipe business at Tulsa, Okla.

The plaintiff, through its agent, Sam Rips, was in Texas and in need of secondhand pipe and talked to the defendant over the telephone at Tulsa, Okla., concerning the purchase of secondhand pipe. The deal was closed for the pipe with the assistance of Jake Rips, a brother of Sam Rips, employed by plaintiff to assist in locating and purchasing secondhand pipe. Three carloads of said pipe were purchased from the defendant by plaintiff and loaded on the cars at Chelsea, Okla., and shipped to Texas, as per the plaintiff's request.

The secondhand pipe was inspected in Texas by the company that was dealing with the plaintiff and rejected on the ground that it was not suitable for the purpose of a pipe line. The plaintiff's contention is that the pipe was purchased from the defendant on his guarantee that it was suitable for pipe line use. The defendant denies this and says the pipe was purchased in the open market subject to plaintiff's inspection, and that plaintiff bought and paid for the same before it was loaded on the cars at Chelsea, Okla.

At the conclusion of the plaintiff's testimony, the defendant demurred to the plaintiff's evidence and moved for a dismissal on the ground that, "the evidence does not state a cause of action," and the same was sustained by the trial court, and the trial court, when asked if judgment was rendered for the defendant, by the plaintiff, answered, "Yes, sir."

1, 2. The law seems to be well settled in this state that when a jury case is tried to the court, the court has the same duties to perform as a jury, and that the court may perform that duty at any time, if, in so doing, the rights of the plaintiff are not impaired.

In the case of Luster v. First Nat. Bank in Oklahoma City, 111 Okla. 168, 239 P. 128, 129, this court said:

"When a jury is waived in a case, where the parties are entitled to a jury, the court occupies the position of a jury and must necessarily weigh the evidence, pass upon the credibility. of the witnesses, and deter-

mine the rights of the parties and arrive at its conclusions in the same manner, governed by the same rules of evidence and procedure that govern and control a jury in their deliberations."

In Lowrance v. Henry, 75 Okla. 250, 182 P. 489, the court said:

"When a trial is had before the court without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not do so at the earliest possible time, when the rights of the plaintiff will not be cut off or impaired by its so doing, and when the plaintiff has introduced all his proof and rested, no right of his will be impaired, if the court then determines what has been proven."

See, also, Porter v. Wilson, 39 Okla. 500, 135 P. 732; Davis v. Wallace, 169 Okla. 497, 37 P. (2d) 602.

Let us now see, by a brief summary of the evidence, measured by the rules of law above cited, if the trial court was justified in sustaining the demurrer of the defendant in this case.

Sam Rips, plaintiff's agent, said he was in Texas and was in need of pipe, and he located his brother, Jake Rips, in Tulsa, and told him to look around and see if he could find some pipe, and that a day or two later he was told by Jake that Joe Davis, the defendant, had pipe. He called Davis on the phone and told him he needed good pipe for a pipe line, and that Davis said he had the kind of pipe he wanted. He testified he told Davis to go ahead and load the pipe, and that Davis refused, and Davis said he wanted a deposit on the pipe and wanted someone to inspect the pipe. He said he told Davis he did not have anyone in Tulsa he would trust to inspect the pipe, and Davis told him his brother, Jake Rips, was in Tulsa, and had been looking at the pipe, and requested that he inspect the pipe. He said he did not believe Jake was capable of making the inspection. Sam Rips then testified, "If Joe Davis (defendant) thinks the pipe is good enough for line pipe and would be the pipe, he could ship it, and he finally insisted for, that I send an inspector, so we agreed to send Jake down there."

"Q. What did you do next? A. I sent Jake down to look at the pipe first, and I received a wire of some kind, I don't remember offhand what it was."

The wire in question was introduced in evidence, which is, omitting the caption, as follows:

"Sam Rips, Baker Hotel, Dallas, Texas. I looked at the Five and Five Eighths Stop Pipe is all right Stop Wire me what you want to do and how you want to handle it also wire me Twenty-five Dollars extra for me. Jake."

Sam Rips further testified that he relied on Mr. Davis' word that it was good pipe. He says the pipe was junk and was not fit for pipe line use, and further testified about the company's inspector for whom he bought the pipe, rejecting it.

On cross-examination, Sam Rips testified that all his brothers had been in the secondhand pipe business, including Jake. He further testified that Davis insisted that he have the pipe inspected and that it was agreed to have the pipe inspected. He said that Davis asked him to come and inspect the pipe and that he was too busy, and that Davis asked him to send someone else, but that they finally agreed on Jake, and that he instructed Jake to inspect the pipe. He testified about the money for the pipe being wired to Davis before the pipe was shipped to Texas. There was testimony by several witnesses after the pipe was unloaded in Texas to the effect that the pipe was in bad condition and not fit for use in pipe line construction.

There was objection to the telegram being introduced in evidence by the plaintiff, but we find no merit in the objection.

Surely, under the rules of law pronounced, the trial court, in weighing the evidence, was justified in finding that the defendant sold the pipe subject to the purchaser's inspection. It cannot be said that the trial court erred in finding that the evidence introduced by the plaintiff warranted the sustaining of the demurrer of the defendant. It was its duty to weigh the evidence, and this court, under all the decisions, must sustain the trial court if there is any evidence upon which he rendered his decision, and, upon reading the entire record, we are frank to say that the great preponderance of the evidence shows that the defendant insisted on selling his property, subject to the inspection of the buyer, without the slightest warranty.

3. This court has held that where one purchased personal property, subject to inspection before delivery, the purchaser, after delivery, is precluded from claiming damages on account of breach of express or implied warranty, involving defects readily discoverable on inspection.

The plaintiff claims that there was an implied warranty on the part of the defend-

ant, and the same was breached. Plaintiff says that anyone would know, by the slightest inspection, that the secondhand pipe was junk and not suitable for any purpose for which pipe is used. But we hold that plaintiff made its own inspection before the contract was closed, and was afforded every opportunity to ascertain the condition of the pipe, and if the plaintiff, by reason of selecting an incompetent or careless inspector, bought pipe they could not use for this particular pipe line, they cannot hold the defendant liable. Sherman v. Sheffield Cast Iron & Foundry Co., 50 Okla. 109, 150 P. 1062, is a case in point. See, also, Citizens Independent Mill & Elevator Co. v. Perkins, 52 Okla. 242, 152 P. 443; Farmers & Merchants Bank of Perry v. Howland, 138 Okla. 58, 280 P. 460.

The trial court found from the evidence that there was no contract,—"no meeting of minds until you (plaintiff) appointed an inspector and checked it in. The demurrer is sustained."

The action of the trial court in sustaining the demurrer to the evidence and rendering judgment for the defendant is affirmed.

The Supreme Court acknowledges the aid of Attorneys Mont Powell, Bryne A. Bowman, and R. R. Bell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Powell, and approved by Mr. Bowman and Mr. Bell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and WELCH, PHELPS, and CORN, JJ., concur. RILEY, BAYLESS, BUSBY, and GIBSON, JJ., absent.