E. Ray PRICE, Plaintiff in Error,

v.

N. L. CLIFTON, Jr., dba Clifton Trucking Company, Defendant in Error.

No. 40460.

Supreme Court of Oklahoma.

March 31, 1964.

McClelland, Collins, Sheehan, Bailey & Bailey, by Richard R. Bailey, Oklahoma City, for plaintiff in error.

Montgomery & Montgomery, by Jayne N. Montgomery, Purcell, for defendant in error.

BLACKBIRD, Chief Justice.

The parties appear here in the same order, and will hereinafter be referred to, as they appeared in the trial court.

In the action instituted in said court in October, 1961, plaintiff, owner and operator of an Oklahoma City insurance agency, sought judgment against defendant, owner and operator of an interstate trucking business, for the sum of $5742.88, which plaintiff alleged to be the balance due on defendant's account with his agency. Plaintiff also sought interest on said balance at the rate of 6% per annum from April 28, 1961, plus an attorney's fee and costs of the action. As indicated in the statements attached to plaintiff's petition, the charges, or debits, in the account were for premiums on insurance policies plaintiff had caused to be issued to defendant.

By a pleading denominated "ANSWER AND COUNTERCLAIM" defendant inferred that the account was not correctly stated, and, among other things, alleged that cash payments he had made on said account had not been properly credited thereon. By way of counterclaim defendant also alleged, in substance, that he had been compelled to pay fines in the total amount of $1157.50 for operating trucks without permits, which permits could only have been obtained, or kept in force, by

procuring insurance that plaintiff had advised him he had obtained for him, but did not obtain. He sought judgment over against plaintiff in that sum, plus his costs and such other relief as the court might deem just and proper.

In the submission of the cause to the jury, three forms of verdict were furnished the jury for use in arriving at its decision. After its deliberations the jury returned to the court room with two of the forms signed. One of them set forth a finding for plaintiff, against the defendant, and fixed the amount of his recovery at $1827.93. Another signed verdict set forth the same finding and recovery, but added a finding for defendant on his answer and counterclaim. The part of this verdict for writing in the amount of such a recovery, however, was left blank. Upon questioning the jury, and conferring with the parties' attorneys, concerning the matter, the trial judge accepted the first above described verdict; and judgment was thereafter entered accordingly. One of the grounds upon which plaintiff based the motion for a new trial he thereafter filed, was that of newly discovered evidence. After the overruling of this motion, plaintiff perfected the present appeal.

In the first two of the three propositions plaintiff presents for reversal of the trial court's judgment, he attacks the verdict. He first charges that it is contrary to law and not sustained by sufficient evidence. In the second, he charges that the verdict is " * * * inadequate under the evidence presented."

In his arguments under the first of these two propositions, plaintiff delves quite extensively into the testimony elicited at the trial from the defendant and his daughter, Mrs. Hayes, who was the bookkeeper for his business, concerning their objections to the manner in which plaintiff handled defendant's insurance matters. In his development of, and arguments concerning, this testimony, plaintiff's counsel has obviously attempted to show, by the process of elimination, that defendant had no real objection to the account, as stated by plaintiff, or that such objections, as were expressed in his behalf, were without substantial foundation, or immaterial. Under both propositions, plaintiff seeks to show that even if all sums, for which defendant attempted to show himself entitled to reimbursement from plaintiff, were offset against the balance shown by plaintiff's records to be due him from defendant on insurance premiums, the verdict is still $1000.00 short of such a credit balance.

In our opinion, these arguments attribute especial weight and value to plaintiff's records that may not have been justified in the minds of the jury; and almost entirely disregards a very important facet of defendant's position at the trial. Before discussing this, we will eliminate from consideration all of the evidence concerning items plaintiff's counsel mentions as possible offsets against the $5742.88 plaintiff sued for. In our opinion, plaintiff's discussion of such evidence tends to cloud the real issue in this case, for, after thoroughly examining the record, we are convinced that such items have no proper place in this appeal, and were effectively eliminated from consideration herein by the jury's apparent refusal to award the defendant any recovery on his counterclaim. The verdict which was accepted and incorporated in the judgment simply awarded plaintiff $1827.93, and there is no evidence that this was a so-called "compromise" verdict, or that this figure—ostensibly the balance the jury found was due on defendant's insurance account with plaintiff—was in any manner affected, influenced, or arrived at by consideration of the items upon which defendant's counterclaim was based.

■■ In a part of his testimony (which plaintiff's counsel seems to consider of little, if any, significance) defendant maintained that plaintiff accepted $1000.00 from him on February 14, 1961, in full payment of the balance then due on his insurance account with plaintiff, despite the fact that this amount was considerably less than the balance indicated to be due on a statement

of said account that an employee in plaintiff's office had previously brought to defendant's office, which, at that time, was in his home, near plaintiff's office in the southeastern part of Oklahoma City. This excerpt of plaintiff's testimony is as follows:

"Q  Now, let me direct your attention to Page 2 of defendant's Exhibit—Plaintiff's Exhibit 2 which the Jury has copies of and direct your attention more specifically to February 14, 1961, where there is a payment of $1,000.00, that's about 1, 2, 3, 4, 5, credits from the bottom up there, $1,000.00, now who made that payment?

"A  I did.

"Q  Well tell the Jury under what circumstances?

"A  Mr. Price was down to the office.

"Q  What time of day or night was this?

"A  It was after four o'clock in the evening.

"Q  All right.

"A  And Mr. Price ‡pulled up in the drive and he asked, 'How's your loot' in other words speaking of money terms, O. K., I said, Ray. He said, 'Well, I kind of want to settle up on this insurance' and I asked him how much do I owe him, he said, 'Well, you owe me a thousand dollars, a few pennies either way, I'll settle for a thousand', so I went in the office and wrote him a check for $1,000.00.

"Q  Was any reference made to this statement that—introduced as Defendant's Exhibit No. 1, at that time? I hand you Defendant's Exhibit 1, at that time, in February, 1961, was there any reference or any discussion of that statement?

"A  Yes sir, I asked Mr. Price, I said, well, what about the statement that your office girl brought down and he said, well you and me are doin' business, that's what you owe me, there could have been error but you owe me approximately a thousand dollars.

"Q  And at that time that was to bring you current, was that your understanding?

"A  That's right."

Defendant's above quoted testimony was specifically contradicted by the plaintiff himself, but, in view of other evidence with reference to the informal way that plaintiff and defendant had conducted their business together as personal friends officing in the same outlying neighborhood, the trouble that defendant had had in obtaining what he and Mrs. Hayes regarded as a correct and current statement of his account with plaintiff, with evidential basis for the inference that the keeping of records in plaintiff's office suffered from frequent changes and replacements in his staff, we are not in a position to say that the quoted testimony is implausible or unworthy of belief. If the jury, as apparently was the case, concluded from said testimony (which is not claimed to be incompetent or demonstrated to be legally insufficient) that this $1,000 defrayed the entire sum defendant owed plaintiff on February 14, 1961, and, accordingly, ignored all debits and credits on plaintiff's office ledger, in regard to transactions that had occurred before that date, and also disregarded all such entries dated subsequent to the one set forth in plaintiff's petition (April 28, 1961, supra), except the difference between the premium defendant had paid for the National Fire Insurance Company's policy No. 959145, and the credits coming to him upon said policy's cancellation, then it could reasonably have concluded that the true principal balance due on defendant's account was a figure between $1663.00 and $1775.00. Such a conclusion,

before addition of interest at the rate claimed by plaintiff, could very well have been the basis of the verdict. Of course, the foregoing discussion is not without elements of speculation, but, as we said in Hart v. Starnes Lbr. Co., Okl., 290 P.2d 123, it demonstrates one way in which the verdict could validly have been arrived at. In St. Louis-San Francisco Ry. Co. v. Edwards, 119 Okl. 84, 248 P. 598, we held:

> "Where a cause has been tried to a jury and there is a state of facts reasonably deducible from the evidence which under any theory of the law is applicable to the issues and the facts and the authorities, the judgment will not be disturbed."

In Lawson v. Stemmons, 199 Okl. 335, 185 P.2d 940, we held:

> "Where there is competent evidence reasonably tending to sustain a verdict, although the evidence is conflicting, and same is submitted to the jury upon instructions to which no objection is made, this court upon appeal will not disturb the judgment based upon such verdict."

In view of the foregoing, the judgment appealed from cannot be reversed on the basis of the arguments advanced under plaintiff's first two propositions.

Under plaintiff's "PROPOSITION III", he attempts to show that the trial court committed error in not sustaining his motion for a new trial on the ground of newly discovered evidence. The evidence referred to is claimed to have been developed in an investigation made after the trial, and was described in an affidavit plaintiff attached to his said motion. He represents this investigation as indicating that the fines defendant had testified to having paid in the States of Missouri and Texas, on account of plaintiff's failure to keep him provided with the insurance necessary to keep his permits to operate in those States, were substantially less than defendant testified, or were "non-existent". In view of our already announced opinion that plaintiff's verdict award in this case was arrived at independently, and without consideration, of such fines, these arguments demonstrate no cause for reversal.

In accord with the foregoing the judgment appealed from is hereby affirmed.

HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.